**FILED**

APR - 8 2015

Clerk, U.S. District and
Bankruptcy Courts

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CLARE HARRIGAN**<br>2100 Westview Terrace<br>Silver Spring, Maryland 20910<br>(240) 643-9277<br>harriganveeoc@gmail.com | )<br>)<br>)<br>)<br>` |
| Pro Se Plaintiff<br><br>vs. | Case: 1:15–cv–00511<br>Assigned To : Mehta, Amit P.<br>Assign. Date : 4/8/2015<br>Description: Pro Se Gen. Civil  (F Deck) |
| **JENNY R. YANG,** in her official capacity as Chair of the<br>United States Equal Employment<br>Opportunity Commission<br><br>and<br><br>**UNITED STATES EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION**<br>131 M Street, N.E.<br>Washington, D.C. 20507<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR MANDAMUS,
DECLARATORY AND INJUNCTIVE RELIEF**

**I. PRELIMINARY STATEMENT**

1.     This case is brought under the Administrative Procedure Act for judicial
review of action taken by the U.S. Equal Employment Opportunity Commission (EEOC) that
exceeded the scope of its authority under Title VII of the Civil Rights Act of 1964 (Title VII).
The challenged EEOC action was taken in an arbitrary, capricious, bad faith effort to protect
federal officials from the consequences of their repeated violations of the Title VII
prohibition on retaliation.

**RECEIVED**

APR - 8 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

2.      Unlike an employee in the private sector, a federal employee must allow the agency that employs her to investigate and decide her Title VII complaint.  For decades, the conflict of interest inherent in federal sector EEO complaint processing was a subject of concern and of ineffective reforms.  Finally, in 1979, Congress transferred responsibility for the oversight of federal sector complaint processing from the former Civil Service Commission to the EEOC.  The express purpose of the transfer was to guarantee that federal employees were afforded a process that was fast, fair, comprehensive and conflict free.

3.      Under the regulatory scheme established by the EEOC each federal agency is required to maintain an EEO Office to receive, investigate and decide discrimination complaints for its employees.  The EEOC then hears employees' appeals from their agencies' decisions and the EEOC enforces orders that are entered on behalf of employees.

4.      Theoretically federal employees who have exhausted their administrative remedies may adjudicate their Title VII claims in an administrative or judicial trial.  However, for most employees the cost of a trial is prohibitive.  Thus, the complaint processing procedure established and overseen by the EEOC is their first and only option.

5.      The plaintiff worked for many years in a small office with approximately ten staff attorneys.  Over a four year period following the appointment of a new manager, the plaintiff and four other older, female staff attorneys were removed from their positions.  In 2007, the plaintiff filed a gender-based discrimination complaint with her EEO Office at the U.S. Department of Housing and Urban Development (HUD).

6.      For over seven years HUD officials used a variety of tactics to obstruct and prevent an impartial investigation and decision of the plaintiff's discrimination complaint.

Their intent was to convince the plaintiff that she could never prevail and to abandon her complaint. The actions of these HUD officials violated the Title VII prohibition on retaliation.

7.     In response to their unlawful acts, the plaintiff filed retaliation complaints with the HUD EEO Office. Eventually when the EEOC heard the plaintiff's retaliation complaints, it entered orders absolving the HUD officials of any responsibility for their actions that violate the Title VII prohibition on retaliation.

8.     The EEOC dismissed one retaliation complaint because four paragraphs in the multi-paragraph complaint raised "allegations that HUD improperly handled FOIA requests" and "the Commission has held that it does not have jurisdiction over the processing of FOIA requests." The EEOC ordered the dismissal of a second retaliation complaint because it expressed "dissatisfaction" with the processing of the plaintiff's 2007 gender-based discrimination complaint.

9.     In both instances the retaliation complaints were dismissed by the EEOC in reliance on a regulation or guidance it had purportedly issued to implement Title VII. However, a regulation or guidance that requires the dismissal of a valid retaliation complaint does not insure that personnel actions affecting federal employees are free from discrimination. Instead, the regulation and guidance insure that federal officials will not be held accountable for preventing the impartial processing of their employees' discrimination complaints. Here, the EEOC invoked its regulation and guidance to provide HUD officials with a pass on their violations of the Title VII prohibition on retaliation. Accordingly, the EEOC did not have the statutory authority to adopt the regulation and guidance upon which it relied to dismiss the plaintiff's retaliation complaints.

3

10.    In another bad faith effort to protect HUD officials, the EEOC refused to comply with one of its lawfully promulgated regulations.  HUD openly and defiantly refused to comply with a November 2012 EEOC Order to clarify the claims and to complete an adequate and appropriate investigation of the plaintiff's 2007 complaint.  Consequently, in June 2013, pursuant to 29 C.F.R. § 1614.503 the plaintiff filed a petition to enforce the 2012 Order.  And, pursuant to EEOC guidance the petition requests the sanction of a default judgment against HUD.

11. The 29 C.F.R. § 1614.503 procedures include step-by-step instructions that "shall" be followed by the EEOC when it receives a petition to enforce an order.  The text of the regulation is stated in mandatory terms that permit no discretion to ignore its requirements or to make substitutions for its requirements.

12.    Nevertheless, in a bad faith effort to protect HUD officials from the consequences of a ruling on the petition for enforcement and sanctions, the EEOC ignored its non-discretionary obligation to follow the 29 C.F.R. § 1614.503 procedures.

13.    Instead, on January 12, 2015, the plaintiff received an EEOC order scheduling an administrative trial of the plaintiff's 2007 discrimination complaint.  The trial was ordered by the EEOC as a substitute for ruling on the plaintiff's petition for enforcement and sanctions.

14.    As a result, after investing eight years, hundreds of hours of time, and incalculably emotional energy in the failed administrative process, the EEOC required the plaintiff to choose between two bad options.  She could either abandon her discrimination and retaliation complaints or she could spend tens of thousands of dollars in legal fees and

costs, and hundreds of hours of time, in a very emotionally taxing and legally complex administrative or judicial trial of her claims.

15.     But the Commission was not finished protecting HUD.  Five   days after the plaintiff received the order scheduling the administrative trial, the EEOC issued another order to prevent the adjudication of the plaintiff's retaliation claims.  Under the order, the trial would adjudicate claims for events that occurred prior to June 2007 and the claims for all subsequent events-including all retaliation-were to be dismissed.

16.     In Title VII Congress authorizes the EEOC to issue "rules, regulations, orders and instructions" to protect federal employees' right to a work place that is free of discrimination.  The Commission may only exercise its statutory authority to achieve the purposes of Title VII.  The Commission has no statutory authority to protect federal officials who violate the Title VII prohibition on retaliation.

17.     Judicial review is permitted here.  The Commission acted outside the scope of its statutory authority when it dismissed the plaintiff's retaliation complaints.

18.     Judicial review of the Commission's failure to follow its own regulatory procedure is also appropriate, particularly since 29 C.F.R. § 1614.503 confers an important procedural right on the plaintiff.

19.     The plaintiff requests that this Court:

(a) Enter an order within the next 60 days enjoining the administrative trial of the plaintiff's 2007 discrimination claims.

(b) Declare unlawful the regulation and guidance relied upon to dismiss the plaintiff's retaliation complaints and order the reinstatement of the retaliation complaints.

(c) Direct the EEOC to comply with its regulation and guidance on the processing and determination of the plaintiff's June 2013 petition for enforcement and sanctions against HUD.

5

**II. JURISDICTION AND VENUE**

20.     This Court is authorized to provide the requested declaratory and injunctive relief by 28 U.S.C. §§ 2201-2202, 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

21.     This Court is authorized to compel the defendants to perform their duties under 29 C.F.R. § 1614.503 by 28 U.S.C. § 1361, 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

22.     This Court is authorized to exercise jurisdiction over the defendants by 28 U.S.C. § 1346.

23.     The filing of this action is authorized by 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to the claims in this action occurred in this judicial district.

**III. PARTIES**

**A. Plaintiff**

24.     Plaintiff Clare Harrigan worked at HUD from 1991 to 2011.

**B. Defendants**

25.     The defendants are Jenny R. Yang, in her official capacity as Chair of the EEOC, and the EEOC.  The EEOC is an agency of the United States subject to judicial review under the Administrative Procedure Act.  5 U.S.C. §§ 701-706.  The EEOC has the statutory authority and responsibility to enforce the laws that prohibit employment discrimination in the federal sector, including Title VII of the Civil Rights Act of 1964.

**IV. FACTS**

For purposes of clarity, the factual allegations relevant to the plaintiff's claims are ordered as follows:

A.  Statutory and regulatory framework.
B.  Background on the plaintiff's initial gender-based discrimination complaint.

C.  HUD's retaliation during the processing of the plaintiff's discrimination complaint.
D.  Chronology of the processing of the plaintiff's complaints and the action taken by the EEOC to protect HUD officials.

## A.  Statutory and regulatory framework.

26.     A recent EEOC publication summarizes the long history of various efforts to address employment discrimination in the federal sector.  It explains that responsibility for federal sector complaint processing was transferred from the former Civil Service Commission to the EEOC in order to protect federal employees' right to a fast, fair, impartial and conflict-free investigation and determination of their EEO complaints.

27.     To accomplish its obligation to protect federal employees, Title VII authorizes the EEOC to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate" to insure that "all personnel actions affecting employees...in executive agencies...shall be made free from any discrimination based on race, color, religion, sex, or national origin."

28.     The regulatory scheme established by the EEOC requires each federal agency to maintain an EEO Office to receive, investigate and decide discrimination complaints for its employees.  The EEOC then hears employees' appeals from their agencies' decisions and the EEOC enforces orders that are entered on behalf of employees.

29.     The EEOC regulations governing the processing of federal sector discrimination complaints are in 29 C.F.R. PART 1614.  EEOC Management Directive 110 provides interpretative guidance on the Part 1614 regulations.  MD 110 describes in detail the procedures each federal agency's EEO Office is required to follow in its processing, investigation and determination of Title VII complaints.   In addition to Part 1614 regulations and MD 110, the EEOC has issued instructions and guidance on federal sector

complaint processing in a variety of formats and it offers trainings for agency officials and employees of agency EEO Offices.

30.     Of particular relevance to this case are the statutes, regulations and guidance that require federal officials to avoid actual and perceived conflicts of interest.  The law requires a federal agency to create impenetrable conflict walls between those in its Office of General Counsel who will advise officials on a discrimination complaint, including in particular:

(a) attorneys who will advise Responsible Management Officials named in the complaint;

(b) attorneys who will advise the EEO Office on its processing, investigation and determination of the complaint;

(c) attorneys who will defend the agency in an administrative or judicial action arising out of the complaint; and

(d) attorneys who will advise the personnel office on proposals to take adverse employment action against the employee who filed the discrimination complaint.

31.     Theoretically, a federal employee who has exhausted her administrative remedies has the option to adjudicate her Title VII claims in an administrative or judicial trial.  In reality, for most federal employees trial is an elusive option because they lack the skills to represent themselves and the resources to hire an attorney.  For most federal employees, the first and only option is the administrative investigation and determination provided by the agency's EEO Office and the EEOC's appeal process.

32.     For example, the plaintiff's former co-worker who is litigating discrimination claims similar to the plaintiff's has incurred $170,000 in attorney's fees and costs just to complete the discovery phase of the proceeding.  Although a federal employee who prevails in an employment discrimination action may recover the fees and costs of the action, since

a win is never certain in trial court litigation, few have the financial ability to gamble such a large sum of money on the litigation process.

33.     The prohibitive cost of an administrative or judicial trial heightens the importance of the EEOC's obligation to oversee the complaint processing procedures of federal agencies and to take appropriate regulatory action against any federal agency that fails to provide a fast, comprehensive, impartial and conflict-free investigation and decision process for its employees.

34.     Although Congress made the EEOC accountable for federal sector complaint processing procedures, the courts interpret the substantive provisions of Title VII.  The EEOC was not given rulemaking authority to interpret the substantive provisions of Title VII.

35.     Of particular relevance to this case are judicial interpretations of the Title VII prohibition on retaliation.  The D.C. Circuit held that the Title VII prohibition on retaliation in the federal sector is broader and more comprehensive than the prohibition on retaliation in the private sector.

36.     The Title VII prohibition on retaliation is intended to "deter the many forms that effective retaliation may take."  Accordingly, Title VII bars any material adverse action that "well might dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railroad Co. v. White,* 548 U.S. 53, 64, 68 (2006) (internal quotation marks omitted).

37.     Over a period of several years HUD officials were unrelenting in their efforts to prevent the processing, investigation and decision of the plaintiff's discrimination

complaint. Their actions were intended to dissuade the plaintiff from continuing to pursue her complaint and, therefore, their actions violated the Title VII prohibition on retaliation.

38. Over a period of several years HUD officials took contrived and unfounded adverse actions against the plaintiff. Their actions were intended to dissuade the plaintiff from continuing to pursue her discrimination complaint and, therefore, their actions violated the Title VII prohibition on retaliation.

39. Over a period of several years HUD officials took multiple contrived and unfounded adverse actions against the plaintiff's friend and supportive former co-worker, Terri Roman. Their actions were intended to dissuade the plaintiff from continuing to pursue her discrimination complaint and, therefore, their actions violated the Title VII prohibition on retaliation.

40. The HUD EEO Office did not provide a process that was fast or fair or complete or impartial or conflict free. The plaintiff is unaware of any effort by the EEOC to require the HUD EEO Office to comply with its statutory and regulatory obligations.

41. According to records the HUD EEO Office is required to publish, over the past ten years it has received, investigated and decided hundreds of EEO complaints, but it has never found that a HUD employee was the victim of employment discrimination.

**B. Background on the plaintiff's initial gender-based discrimination complaint.**

42. Plaintiff Clare Harrigan worked at HUD from 1991 to 2011. She was a trial attorney from 1991 to 2001 and a senior trial attorney from 2001 to 2007, in the Office of Litigation (OLL), within the Office of the General Counsel (OGC).

43. The OLL is a small office with approximately ten staff-level attorneys.

44.     In the summer of 2005, the General Counsel appointed a new director for the OLL. When Responsible Management Official (RMO) Christopher arrived, the environment changed for the older, female attorneys in the OOL.

45.     In April 2007, the plaintiff filed an informal administrative complaint of gender-based discrimination with the HUD EEO Office.  Immediately after filing, the OOL supervisory staff increased their hostility toward the plaintiff and her friend and supportive co-worker, Terri Roman.

46.     In June 2007, to avoid further career-threatening discrimination and retaliation, the plaintiff was forced to accept a transfer to a much less desirable, non-litigation position.

47.     The plaintiff was not the only staff attorney who was forced out of her position in the OOL.

48.     During a period of less than four years, five accomplished, older female staff attorneys were involuntarily removed from the OLL.  Eventually four of them filed complaints.

- Shari Weaver - November 2005, forced into early retirement to avoid unjustified adverse actions.  HUD settled her administrative discrimination complaint.

- Ramona Fine - October 2006, position eliminated.

- Clare Harrigan - June 2007, transferred to avoid career-threatening, unjustified adverse actions.  Administrative discrimination complaint still pending after almost eight years.

- Terri Roman - November 2008, involuntarily transferred after multiple unjustified adverse actions culminating in a failed attempt to terminate her federal service.  The processing of her administrative discrimination complaint took over five years.  Her case is currently pending in federal district court.

- Marianne Morris - October 2009, unjustified termination of her federal service without notice or required due process procedures. MSPB complaint denied.

## C. Retaliation during the processing of the plaintiff's discrimination complaint.

49.    Even after a number of staff attorneys expressed concern about the environment in the OOL, RMO Christopher had the full support of the General Counsel.

50.    Normally the General Counsel would not have been concerned about the allegations in the plaintiff's 2007 complaint that RMO Christopher was violating Title VII. After all, attorneys who worked for the General Counsel would advise the EEO Office on its investigation and decision on the complaint.

51.    The General Counsel knew that the "Final Agency Decisions" issued by the EEO Office always favored management.

52.    And, the General Counsel knew that the EEO Office never found that an employee had been the victim of discrimination or retaliation.

53.    Nevertheless, by the summer of 2007 the General Counsel seemed very concerned about the plaintiff's complaint.  He was probably concerned because:

(a) RMO Christopher was relatively new to the OOL;

(b) HUD had already paid to settle one discrimination complaint against RMO Christopher; and

(c) at least two future complaints against her seemed possible.

Since RMO Christopher only supervised ten staff attorneys, multiple complaints might appear significant even after their dismissal by the HUD EEO Office.

54.    To address his concern about discrimination complaints against OGC, the General Counsel promoted Linda Cruciani to the position of Deputy General Counsel for

Operations.   For many years prior to HUD, Responsible Management Official (RMO) Cruciani had worked for the EEOC and she maintained close ties to the Commission.

55.    In her new position RMO Cruciani would supervise all of the lawyers in the Office of General Counsel who provided advice on the various aspects of a discrimination complaint.   RMO Cruciani would be involved in or control all personnel decision for OGC, including among others, compensation, awards, promotions, disciplinary action, training, office space and equipment.   RMO Cruciani could leverage her control over personnel decisions to control the advice provided by OGC lawyers on discrimination complaints.

56.    During the processing of the plaintiff's complaints, RMO Cruciani, those under her supervision and the EEO Office were unrelenting in their efforts to discourage the plaintiff from continuing to pursue her claims.   Some of their retaliatory actions included:

- arranging for multiple unfounded investigations of the plaintiff and her former co-worker Terri Roman, who was supportive of plaintiff;

- arranging for the investigation of plaintiff for allegedly leaving nail-filled cupcakes at an OOL holiday party – an accusation that was totally absurd since the plaintiff worked in the OOL for 15 years and was friends with most of her former co-workers;

- threatening the involuntarily transfer of Ms. Roman to Alabama;

- arranging for three agents of the Inspector General to arrive unannounced in the OOL and remove Ms. Roman's computer hard drive shortly before the OOL staff received investigative affidavits to complete in the plaintiff's complaint;

- RMO Cruciani personally ordering the plaintiff to appear to be interrogated by agents of the Inspector General during the period when RMO Cruciani was preparing her affidavit testimony in the investigation of the plaintiff's complaint;

- preventing the plaintiff from obtaining supportive witness testimony during the investigation of her complaint by threatening retaliation against potential witnesses and by rewarding potential witnesses who refused to respond to requests for affidavit testimony;

- preventing the plaintiff from preserving evidence she would need to prove her discrimination complaint by refusing to comply with HUD's policy on the preservation of evidence;

- preventing the plaintiff from obtaining evidence to support her complaint by refusing to produce documents responsive to three FOIA requests in accordance with the regulations governing FOIA;

- preventing the plaintiff from obtaining evidence to support her complaint by refusing to comply with multiple administrative orders to produce documents responsive to the plaintiff's three FOIA requests;

- replacing investigators assigned to the plaintiff's complaints when the investigation or the investigative report may support the plaintiff's complaints;

- replacing investigative affidavits to include new defenses after the investigation was closed;

- removing documents from the investigative file;

- failing to meet almost every time deadline by at least months and sometimes years, while threatening the dismissal of plaintiff's complaint if she missed any deadline;

- manipulating the transfer process to prevent plaintiff's transfer to the newly created Federal Housing Finance Agency;

- manipulating the transfer process to deny plaintiff' the opportunity to do a detail at the Consumer Financial Protection Bureau;

- serving and threatening to serve on plaintiff's former co-worker Terri Roman petitions to terminate her federal service;

- serving Ms. Roman with a proposal to suspend her without pay based on a ridiculous allegation that Ms. Roman had stolen documents for the plaintiff;

- transferring Ms. Roman to an office in which the OGC managers would continue to manufacture contrived deficiencies in Ms. Roman's performance and manufacture alleged legal violations to be investigated;

- providing false and contradictory instructions to the plaintiff during the processing of her complaints to create circumstances in which the plaintiff's retaliation complaints could be dismissing;

- dismissing every retaliation claim in the plaintiff's complaints; and

- lying in sworn testimony provided during the investigation of the plaintiff's complaints.

57.     RMO Cruciani, those under her supervision, the EEO Office and other HUD officials openly ignored the legal requirement to avoid conflicts of interest in their processing, investigation and decision of the plaintiff's EEO complaints.

58.     In attachments to documents filed in *Brown v. HUD*, Civil No. 12-696 (D.D.C.), RMO Cruciani acknowledged her violations of the law governing conflicts of interest.  In a sworn affidavit and deposition testimony RMO Cruciani stated that she met on a weekly basis with Javes Myong, the OGC attorney advising the EEO Office on the plaintiff's complaints.  According to RMO Cruciani's testimony, the weekly meetings were used to strategize and to develop plans for handling discrimination complaints against OGC, including the complaints in which RMO Cruciani was a named Responsible Management Official.

59.     RMO Cruciani also testified that she met with the OGC attorney assigned to represent HUD in the EEOC appeals of the plaintiff's complaints.

60.     In the deposition testimony of a former OGC supervisor, she stated that RMO Cruciani convened a meeting of the following people:

(a) the OGC attorney who was advising the EEO Office;

(b) the OGC attorney who was defending HUD;

(c) an official from HUD's personnel office; and,

(d) an OOL manager who was a Responsible Management Official in the plaintiff's complaints.

The purpose of the meeting was to plan the termination of the plaintiff's friend and supportive former co-worker in the OOL, Terri Roman. The meeting took place during a critical period in the processing of the plaintiff's 2007 Complaint.

61.    Perhaps the most serious violations of the law on conflicts of interest are committed by RMO Cruciani when she makes recommendations and decision on the use of the appropriated settlement fund, which is used to pay HUD judgments and to settle HUD litigation. RMO Cruciani makes recommendations and decisions on the use of the settlement fund in discrimination cases in which she is a named Responsible Management Official. RMO Cruciani decides if and when a settlement offer will be made, the amount that will be offered, and what the offered amount will cover.

62.    RMO Cruciani uses her control over the settlement fund to create conflicts of interest between complainants and their attorneys. For example, RMO Cruciani offered to pay $185,000 in attorney's fees to settle a case in federal district court. The plaintiff in that case had incurred $170,000 in attorney's fees just to complete the discovery phase of the litigation. As intended by RMO Cruciani, the plaintiff's attorney began to strong-arm his client to accept the settlement offer, even though the plaintiff would receive nothing other than the payment of her bill for attorney's fees. If the case settles on RMO Cruciani's terms, no money will be paid to settle the plaintiff's claims that RMO Cruciani violated Title VII.

63.    RMO Cruciani used the same tactic in the plaintiff's case. Javes Myong is the OGC attorney who advised the EEO Office on the plaintiff's complaint. On a couple of

occasions Mr. Myong contacted the plaintiff's former attorney to see if he was interested in settling the plaintiff's complaints.  Mr. Myong explained that it was a really good time to settle, because HUD had funds that could be used to pay his fee.  Mr. Myong did not offer any amount to compensate the plaintiff for RMO Cruciani's violations of Title VII.

64.     RMO Cruciani has been named a Responsible Management Official in at least ten administrative discrimination complaints and three complaints in federal district court. HUD has paid hundreds of thousands of dollars to settle matters in which RMO Cruciani is a named Responsible Management Official.  RMO Cruciani has exercised her control over the settlement fund to insure that there is never a finding that she violated Title VII.

### D. Chronology of the processing of the plaintiff's EEO complaints and the action taken by the EEOC to protect HUD officials.

The following chronological list of processing events may be difficult to follow.  To assist the reader each of the plaintiff's EEO complaints has a title and the titles are in bold each time they appear, *e.g.* **2007 Complaint**.

65.     In October 2007, the plaintiff filed an amended complaint with the HUD EEO Office (herein referred to as the **2007 Complaint**).

66.     On June 28, 2010 and August 16, 2010, the plaintiff filed complaints with the HUD EEO Office for continuous acts of retaliation (herein referred to as the **2010 Complaint**).

67.     On November 2, 2010, the plaintiff received HUD's Final Agency Decisions dismissing her **2007 Complaint** and **2010 Complaint**.

68.     On December 1, 2010, the plaintiff filed EEOC appeals on her **2007 Complaint** and **2010 Complaint**.

69.     On June 13, 2011, the plaintiff filed a new complaint with the HUD EEO Office for continuous acts of retaliation (herein referred to as the **2011 Complaint**).

70.     On November 21, 2012, the EEOC issued an appellate Decision and Order

that covered both the **2007 Complaint** and the **2010 Complaint**.

71.     ***EEOC Decision on 2010 Complaint*** – The **2010 Complaint** stated the

following three claims:

(a) HUD took adverse actions against the Complainant in retaliation for the
Complainant exercising her rights and in an effort to discourage the
Complainant from continuing to pursue her protected activity.

(b) HUD retaliated against the Complainant for exercising her rights and in
an effort to discourage her from continuing to pursue protected activity, by
taking adverse actions against Terri Roman, a close associate of the
Complainant.

(c) HUD retaliated against the Complainant by taking adverse actions against
the Complainant in an effort to discourage Terri Roman, a close associate of
the Complainant, from exercising her rights and to discourage Terri Roman
from continuing to pursue protected activity.

Each of the three claims was supported by allegations of fact in numbered paragraphs.

72.     The EEOC decision on the **2010 Complaint** states the following:

With respect to claims 19-23, raised in Complainant's June 27, 2010,
complaint, we note that the commission has held that it does not have
jurisdiction over the processing of FOIA requests. Instead, persons having a
dispute regarding such requests should bring any appeals about the
processing of his or her FOIA requests under the appropriate FOIA
regulations. Gaines v. Dep't of the Navy, EEOC Request No. 05970386 (June
13, 2007). In the instant case, therefore, Complainant's allegations that the
Agency improperly handled his FOIA requests fails to state a claim within the
purview of the EEOC regulations at 29 C.F.R. § 1614. We also note FOIA
requests are not classified as participation in EEO activity or opposition to
discrimination. EEOC Compliance Manuel Section 8, "Retaliation," No.
915.003, at 8-II.B-C (May 20, 1998). Therefore, albeit for different reasons,
we find that the Agency properly dismissed Complainant's June 27, 2010
complaint.

73.     The EEOC decision upholding the dismissal of the plaintiff's **2010 Complaint**

is an arbitrary, capricious, bad faith effort to protect HUD officials.   The decision is

nonsense for the following reasons:

> (a) The decision refers to "claims 19-23" as "allegations that the Agency improperly handled [the plaintiff's] FOIA requests."   However, the **2010 Complaint** has only three claims.   The complaint lists allegations of fact in numbered paragraphs, but the numbers do not reach 19.   Since the **2010 Complaint** has only three claims, it is nonsense to dismiss it based on allegations in "claims 19-23."

> (b) The decision dismisses the entire **2010 Complaint**, because paragraphs 19-23 raise allegations that HUD improperly handled the plaintiff's FOIA requests.   It is nonsense to dismiss all three claims in the complaint, because the EEOC does not have jurisdiction over some of the facts, which support one of the three claims in the complaint.

74.     ***EEOC Decision on 2007 Complaint*** - The EEOC's November 21, 2012

Decision and Order found that the HUD EEO Office had not completed an impartial and

appropriate investigation of the **2007 Complaint** as required by 29 C.F.R. § 1614.108.   The

Decision found that the factual record was insufficient to make findings on the claims in the

**2007 Complaint**.   Therefore, the EEOC vacated HUD's finding of no discrimination and it

remanded the **2007 Complaint** to the HUD EEO Office for supplemental investigation.

75.     The Remand Order required the HUD EEO Office to do the following:

> (a) arrange for an EEO Counselor to meet with the plaintiff and allow the plaintiff to clarify the claims that HUD would investigate;

> (b) engage an investigator to obtain affidavit testimony and all records that may be relevant to the clarified claims;

> (c) allow the plaintiff to submit new evidence into the investigative record;

> (d) complete the supplemental investigation within 120 days [or by March 21, 2013]; and,

> (e) upon completion of the supplemental investigation, provide a copy to the plaintiff and to the Compliance Division of the EEOC.

The Remand Order also states that the plaintiff may petition the EEOC to enforce the Remand Order pursuant to 29 C.F.R. § 1614.503, if the EEO Office fails to comply with any requirement of the Remand Order,.

76.    Under 29 C.F.R. § 1614.106(d) "[a] complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."

77.    On February 14, 2013, pursuant to section 1614.106(d), the plaintiff notified the HUD EEO Office that the **2007 Complaint** was amended to include the issues and claims in her then-pending **2011 Complaint**.

78.    As a result of the amendment, the plaintiff's **2011 Complaint** ceased to exist as an independent complaint.  The plaintiff's **Former 2007 Complaint** and **Former 2011 Complaint** were now jointly the plaintiff's **Amended 2007 Complaint**.

79.    The plaintiff also notified the HUD EEO Office that its supplemental investigation must cover the **Amended 2007 Complaint**, which included the "issues and claims" that had been in the **Former 2011 Complaint**.

80.    Several times the plaintiff asked the HUD EEO Office to comply with the Remand Order's requirement to clarify the claims for investigation in her **Amended 2007 Complaint**.  Each time the plaintiff reminded the EEO Office that the **Amended 2007 Complaint** now included the "issues and claims" from the **Former 2011 Complaint**.  The EEO Office ignored every one of the plaintiff's requests to clarify the claims for investigation in the **Amended 2007 Complaint** or to comply with any other requirement of the Remand Order.

81.     Five months after the Remand Order was issued and two months after its mandatory completion date, the HUD EEO Office had not taken one step to comply with the Remand Order.

82.     In late May 2013, the plaintiff concluded that the EEO Office did not intend to comply with the Remand Order and she began researching and drafting a petition to enforce the Remand Order.

83.     As part of her research, the plaintiff reviewed EEOC training materials on appropriate sanctions for agency noncompliance with an EEOC order (See, "Sanctions in the Administrative Process," Eve G. Friedli, Administrative Judge, (July 12, 2011)).   The training materials cover the legal standard to determine an appropriate sanction and several appellate decisions that imposed sanctions, including default judgments.

84.     On June 21, 2013, pursuant to 29 C.F.R. § 1614.503(a), the plaintiff filed a petition for enforcement of the EEOC's November 21, 2012 Remand Order.

85.     Based on EEOC guidance on appropriate sanctions for agency noncompliance with an EEOC appellate order, the plaintiff requested a judgment of default on the claims in her **Amended 2007 Complaint**--which included the "issues and claims" from her **Former 2011 Complaint** for retaliation.

86.     Default was an appropriate sanction based on the following:

(a) HUD openly and defiantly failed to comply with any of the requirements of the Remand Order.

(b) HUD failed to offer any justification for its noncompliance.

(c) HUD noncompliance with the Remand Order had, and continues to have, a serious prejudicial effect on the plaintiff's ability to prove her claims.

(d) Failing to sanction HUD for its noncompliance with the Remand Order, rewards and encourages future HUD noncompliance with EEOC orders.

87.     On August 25, 2013, which was six months after the plaintiff amended her

**Former 2007 Complaint** to incorporate the "issues and claims" in her **Former 2011**

**Complaint**, the plaintiff received what purported to be HUD's Final Agency Decision (FAD)

on her **Former 2011 Complaint**.

88.     The purported FAD dismissed the **Former 2011 Complaint.**

89.     The plaintiff sent the EEOC a Notice of Appeal with an explanation that:

(a) The "issues and claims" in the **Former 2011 Complaint** were amended
into the **Former 2007 Complaint,** so the **Former 2011 Complaint** no
longer existed as a separate complaint.  Therefore, there was no need to hear
an appeal of HUD's purported FAD dismissing the **Former 2011 Complaint**.

(b) A petition for enforcement and sanctions was pending before the EEOC.
The petition requested a sanction of default on the **Amended 2007**
**Complaint**, which included the "issues and claims" of retaliation in the
**Former 2011 Complaint**.  Thus, a decision on the plaintiff's petition would
obviate the need for the EEOC to hear an appeal of the purported FAD
dismissing the **Former 2011 Complaint**.

90.     The EEOC ignored the plaintiff and docketed an appeal of HUD's FAD

dismissing the **Former 2011 Complaint**.

91.     On October 22, 2013, the plaintiff filed a Request that the EEOC stay the

appeal of the **Former 2011 Complaint** until after the EEOC decided the plaintiff's petition

for enforcement and sanctions.  In her Request the plaintiff argued that a stay would serve

the interests of judicial economy since a decision on the plaintiff's petition would obviate

the need for a decision on the appeal of HUD's FAD on the **Former 2011 Complaint**.

92.     On November 2, 2013, the EEOC denied the plaintiff's Request for a stay of

the EEOC appeal of the **Former 2011 Complaint**.

93.     Between August 2013 and December 2014, the plaintiff tried unsuccessfully to persuade the EEOC to consider her petition for enforcement in accordance with the EEOC's mandatory procedure in 29 C.F.R. § 1614.503.

94.     In correspondence to the EEOC, the plaintiff explained that section 1614.503(b) required that upon receipt of a petition for enforcement the EEOC's "Office of Federal Operations ***shall take all necessary action*** to ascertain whether the agency is implementing the decision of the EEOC.  If the agency is found not to be in compliance with the decision, ***efforts shall be undertaken*** to obtain compliance [emphasis added]."

95.     And that section 1614.503(c) further provided that "[w]here the Director, Office of Federal Operations, is unable to obtain satisfactory compliance with the final decision, the Director ***shall submit appropriate findings and recommendations for enforcement*** to the EEOC, or, as directed by the EEOC, refer the matter to another appropriate agency [emphasis added]."

96.     In response to requests that the EEOC comply with the procedure in 29 C.F.R. § 1614.503, some EEOC officials told the plaintiff that an administrative trial on the **Former 2007 Complaint** was a permitted, or a required, equivalent substitute for a ruling on her petition for enforcement and sanctions.  Those officials were incorrect.

97.     First and foremost, the requirements in 29 C.F.R. § 1614.503 are stated in mandatory terms and the text does not permit the EEOC to make substitutions for any of its terms.

98.     Second, it is absurd to suggest that going through an administrative trial to adjudicate the claims in the **Former 2007 Complaint** (which will be as complex, costly, and time consuming as a federal district court trial) is an equivalent substitute for an EEOC

ruling on the petition for enforcement and sanctions (which may result in the entry of a default judgment on the **Amended 2007 Complaint**).

99. Third, given that the HUD EEO Office initially failed to conduct an appropriate investigation as required by 29 C.F.R. § 1614. 108 and that the HUD EEO Office then refused to conduct the supplemental investigation required by the Remand Order, it is bizarre to require the plaintiff to undertake protracted, contentious, time-consuming, expensive discovery as a substitute for HUD's flagrant disregard of a regulation and order which were both designed to prevent the need for such discovery.

100. On January 12, 2015, the plaintiff received notice that the EEOC had assigned an Administrative Judge to adjudicate the **Former 2007 Complaint**. The notice included four pages of instructions and rules governing what would be a trial court like, very complicated, time consuming and costly adjudication process.

101. Five days later, on January 17, 2015, the EEOC issued a Decision and Order on the appeal of the **Former 2011 Complaint**. The purpose of the Order was to prevent the trial court adjudication of the plaintiff's retaliation claims.

102. To accomplish this purpose, the Commission's Order divides the plaintiff's claims into two separate complaints. The first complaint, which covers claims for events that occurred prior to June 2007, would be adjudicated at the administrative trial. The second complaint, which covers claims for events that occurred after June 2007, was remanded to HUD for processing consistent with instructions in the Order. Buried in a footnote on page four of the Order is a statement requiring that on remand HUD dismiss any matter in the second complaint that "can be construed as dissatisfaction" with the investigation and adjudication of first complaint. Dismissal was required by 29 C.F.R. §

1614.170(a)(8) and its implementing guidance. Since all of the "matters" in the **Former 2011 Complaint** "can be construed as dissatisfaction" with the processing of the **Former 2007 Complaint**, the footnote requires the dismissal of the **Former 2011 Complaint** and the dismissal of all claims for retaliation.

103. The EEOC appellate Decision and Order on the **Former 2011 Complaint** is an arbitrary, capricious, bad faith effort to protect HUD officials. The indubitable purpose of the Decision and Order is to remove any possibility that HUD officials will be held accountable for their flagrant violations of the Title VII prohibition on retaliation during their processing, investigation and determination of the plaintiff's **Former 2007 Complaint**.

104. Assistant General Counsel Javes Myong "appointed" OGC Attorney Evette Young to represent HUD in the administrative trial of the **Former 2007 Complaint**. Mr. Myong is the OGC attorney who advised the EEO Office in its failed and unlawful processing, investigation and determination of the **Former 2007 Complaint**. In addition, according to her deposition testimony, RMO Cruciani has weekly meetings with Mr. Myong to strategize on the discrimination complaints pending against OGC, including complaints like the plaintiff's, in which RMO Cruciani is a named Responsible Management Official.

105. In February 2015, HUD Counsel Evette Young notified the plaintiff of the following with regard to the administrative trial:

(a) The claims to be adjudicated are limited to events that occurred prior to July 2007.

(b) The only facts to which HUD will stipulate are the gender of certain HUD officials and employees.

(c) The plaintiff will be deposed on March 26, 2015.

106. HUD Counsel Evette Young has made it clear to the plaintiff that the administrative trial process will be frustrating, time-consuming and expensive. The plaintiff cannot represent herself in the administrative trial and the plaintiff is certain that it will cost at least tens of thousands of dollar to retain legal representation.

107. Additional facts suggest that the EEOC's decisions and orders on the plaintiff's complaints are arbitrary, capricious, bad faith action.

(a) In October 2010, RMO Cruciani was appointed to the EEOC Performance Review Board, which makes recommendations on compensation and performance awards for EEOC executives. At the time of her appointment to the Board, RMO Cruciani was a named Responsible Management Official in multiple EEO complaints, including the plaintiff's. RMO Cruciani's appointment created a direct conflict of interest. RMO Cruciani was involved in compensation decisions for EEOC Executives who may be involved with or rule on appeals and petitions in which RMO Cruciani is a named Responsible Management Official, including the plaintiff's.

(b) The EEOC issued a plan for reform of its federal sector complaint processing scheme. Among other things, the EEOC plans to train EEO Offices to prevent their practice of chopping up the claims in complaints and then dismissing the pieces, which is exactly what the EEOC did in its Decisions and Orders on the plaintiff's complaints.

(c) The EEOC plans to integrate its private sector and federal sector complaint processing to insure comparable treatment. In its adjudication of private sector discrimination complaints the EEOC regularly moves for sanctions against defendants who fail to preserve evidence. However, the EEOC dismissed the plaintiff's claims that HUD failed to produce or preserve evidence of its violations of Title VII. And the EEOC refused to hear the plaintiff's petition for enforcement and sanctions.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### (Unlawful Dismissal of the 2010 Complaint for Retaliation)

108. The allegations in the foregoing paragraphs are incorporated by reference.

109. Pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 2201-2202 this court is authorized to enter declaratory and injunctive relief.

110.    The plaintiff has Article III standing for the requested relief.  The plaintiff is injured by the dismissal of her **2010 Complaint** for retaliation.   There is a causal connection between the plaintiff's injury and the EEOC guidance requiring the dismissal of the plaintiff's **2010 Complaint**.  The requested relief will remedy the plaintiff's injury.

111.    The EEOC guidance, which requires the dismissal of an EEO complaint that mentions compliance with FOIA, is not a procedural rule authorized by Title VII.

112.    The EEOC's guidance, which requires the dismissal of an EEO complaint that mentions compliance with FOIA, is a substantive interpretation of the Title VII prohibition on retaliation.

113.    The EEOC's guidance, which requires the dismissal of an EEO complaint that mentions compliance with FOIA, is an incorrect interpretation of the Title VII prohibition on retaliation.

114.    The EEOC did not have the    authority to dismiss the plaintiff's **2010 Complaint** based on EEOC guidance that requires the dismissal of a complaint that mentions compliance with FOIA.

### COUNT TWO
### (Unlawful Failure to Comply With Mandatory Regulation)

115.    The allegations in the foregoing paragraphs are incorporated by reference.

116.    Pursuant to 28 U.S.C. § 1361 and 5 U.S.C. §§ 701-706 this court is authorized to direct the EEOC to comply with its regulation and guidance on petitions for enforcement and sanctions.

117.    The plaintiff has Article III standing for the requested relief.  The plaintiff is injured by the EEOC's failure to comply with its regulation on the processing of her petition to enforce.   There is a causal connection between the plaintiff's injury and the EEOC's

failure to comply with its own regulation.  The requested relief-an order compelling the EEOC to act-will remedy the plaintiff's injury.

118.    For decades courts have held that a valid regulation promulgated by a federal agency is binding on the agency and its officials. *Service v. Dulles*, 354 U.S. 636 (1957).

119.    The procedure in 29 C.F.R. § 1614.503 is a valid regulation that was promulgated by the EEOC.  Therefore, the procedure in 29 C.F.R. § 1614.503 is binding on the Commissioners, EEOC officials, and EEOC employees.

120.    The procedure in 29 C.F.R. § 1614.503 includes step-by-step instructions that "shall" be followed when the EEOC receives a petition to enforce.  The text of the regulation provides no discretion to ignore its requirements or to make substitutions for its requirements.

121.    The plaintiff is entitled to an order directing the EEOC to:

(a) comply with its own non-discretionary regulation on the processing of a petition to enforce, and

(b) comply with its own guidance on the entry of a default judgment on the plaintiff's claims.

122.    The three requirements for Mandamus Act relief are met.  First, the plaintiff has a clear right to the relief requested.  Section 1614.503(a) authorized the plaintiff to petition the EEOC to enforce its November 21, 2012 Decision and Order.

123.    Second, the EEOC has a clear duty to act on the plaintiff's petition pursuant to sections 1614.503(b) and (c).

124.    Third, there is no other adequate remedy available to the plaintiff.

125.    In addition there is a compelling equitable basis for directing the EEOC to comply with its own regulation on the processing of the plaintiff's petition for enforcement

and sanctions. In a bad faith effort to protect HUD officials from the consequences of an EEOC ruling on the plaintiff's petition, the EEOC will not perform its regulatory obligation.

## COUNT THREE
### (Unlawful Dismissal of the Former 2011 Complaint for Retaliation)

126.    The allegations in the foregoing paragraphs are incorporated by reference.

127.    Pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 2201-2202 this court is authorized to enter declaratory and injunctive relief.

128.    The plaintiff has Article III standing for the requested relief. The plaintiff is injured by the EEOC's order requiring the dismissal of her **Former 2011 Complaint** for retaliation. There is a causal connection between the plaintiff's injury and the EEOC's regulation and implementing guidance requiring the dismissal of the plaintiff's **Former 2011 Complaint** for retaliation. The requested relief will remedy the plaintiff's injury.

129.    The EEOC regulation at 29 C.F.R. § 1614.107(a)(8) (and its implementing guidance) that requires the dismissal of a complaint that alleges dissatisfaction with the processing of a previously filed complaint is not a procedural rule authorized by Title VII.

130.    The EEOC regulation at 29 C.F.R. § 1614.107(a)(8) (and its implementing guidance) that requires the dismissal of a complaint that alleges dissatisfaction with the processing of a previously filed complaint is a substantive interpretation of the Title VII prohibition on retaliation.

131.    The EEOC regulation at 29 C.F.R. § 1614.107(a)(8) (and its implementing guidance) that requires the dismissal of a complaint that alleges dissatisfaction with the processing of previously filed complaint is an incorrect interpretation of the Title VII prohibition on retaliation.

132.    The EEOC did not have the authority to dismiss the plaintiff's **Former 2011 Complaint** based on 29 C.F.R. § 1614.107(a)(8) and its implementing guidance, which require the dismissal of a complaint that expresses dissatisfaction with the processing of a previously filed complaint.

## VI. RELIEF REQUESTED

Wherefore, the plaintiff respectfully requests the following relief:

A. A declaration that the EEOC did not have the authority to substitute an administrative trial on the plaintiff's discrimination claims for a ruling on the plaintiff's petition for enforcement and sanctions.

B. Enter an order within the next 60 days enjoining the administrative trial of the plaintiff's discrimination claims.

C. A declaration that the EEOC did not the authority to issue guidance that requires the dismissal of complaints that mention compliance with FOIA.

D. Enter an order reinstating the plaintiff's **2010 Complaint**.

E. Enter an order directing the EEOC to process the plaintiff's petition for enforcement and sanctions, in accordance with the 29 C.F.R. § 1614.503 procedure.

F. Enter an order directing the EEOC to follow its guidance on the imposition sanctions against HUD for its failure to comply with the November 21, 2012 Remand Order.

G. A declaration that the EEOC did not have the authority to promulgate 29 C.F.R. § 1614.107(a)(8) and its implementing guidance.

H. Enter an order reinstating the plaintiff's **Former 2011 Complaint**.

I. Enter an order awarding attorney's fees and costs against the defendants.

J. Enter an order awarding additional relief that the Court may determine to be just and proper.

Respectfully submitted,

Clare Harrigan
Pro Se Plaintiff
2100 Westview Terrace
Silver Spring, Maryland  20910
(240) 643-9277
harriganveeoc@gmail.com

April 8, 2015