UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CLARE HARRIGAN** | ) | |
| | ) | |
| *Pro Se* Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:15-cv-00511 (APM) |
| | ) | |
| **JENNY R. YANG,** Chair of the | ) | |
| United States Equal Employment | ) | |
| Opportunity Commission, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I.     THE APA AUTHORIZES JUDICIAL REVIEW

    A.     Title VII's text does not preclude judicial review.

    B.     Title VII's legislative history supports judicial review of the challenged agency action.

    C.     Title VII's statutory scheme does not provide an alternate remedy to judicial review by this Court.

    D.     EEOC action was not committed to agency discretion by law.

    E.     EEOC action that exceeds its § 717 authority is categorically subject to judicial review.

II.    THIS COURT MAY COMPEL THE EEOC TO COMPLY WITH ITS OWN REGULATION

III.   INJURY

IV.   THE COMPLAINT STATES A CAUSE OF ACTION FOR RELIEF

V.    CONCLUSION

## TABLE OF AUTHORITIES

### TTECHNICAL DIFFICULTIES WITH PROGRAM THAT CREATES A TABLE

## ARGUMENT

## I.    THE APA AUTHORIZES JUDICIAL REVIEW

The Administrative Procedure Act codifies a broad general presumption that final administrative action is judicially reviewable. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986). It waives the sovereign immunity of the United States to allow any person "adversely affected or aggrieved" by final agency action to seek injunctive relief in a court. The reviewing court can "compel agency action unlawfully withheld" and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary and capricious," "in excess of statutory authority," or "without observance of procedure required by law." 5 U.S.C. §§ 702, 704, 706. "The presumption in favor of judicial review may be overcome only upon a showing of clear and convincing evidence of a contrary legislative intent." *Traynor v. Turnage*, 485 U.S. 535, 542 (1988) (citation and internal quotation marks omitted).

### A.    Title VII's text does not preclude judicial review.

Under the APA, judicial review is limited to "final agency action for which there is no other adequate remedy in a court" (5 U.S.C. § 704) and judicial review may be precluded by the express or implied terms of another statute (5 U.S.C. § 702). The defendants argue that Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e) precludes review of the EEOC's actions. EEOC's Mtn. 9-11, 19-21. Section 717 of Title VII covers federal sector employment discrimination. The relevant text provides:

> (a)...All personnel actions affecting employees or applicants for employment...in executive agencies...shall be made free of discrimination based on race, color, religion, sex, or national origin.
> ...

3

> (b)...Except as otherwise provided...the Equal Employment Opportunity Commission shall have authority to enforce the provisions of subsection (a)...and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.
>
> ...
>
> The head of each...agency...shall comply with such rules, regulations, orders, and instructions [of the EEOC]...

42 U.S.C. § 2000e-16.

Consequently, the limitations in 5 U.S.C. § 704 and § 702 will preclude judicial review, of the Agency's actions that are challenged in the plaintiff's complaint, if the text of Title VII, § 717:[1]

    (1) provides the plaintiff an "adequate remedy in a court" for her claims,

    (2) expressly precludes APA review of the plaintiff's claims; or

    (3) precludes APA review of the plaintiff's claims by implication.

Clearly the text of § 717 does not provide the plaintiff "an adequate remedy in a court" or expressly preclude judicial review of the EEOC's actions. Section 717 simply does not address judicial review of, or a judicial remedy for, the plaintiff's claims.

And, the text of § 717 does not preclude review of the plaintiff's claims by implication. Section 717 commands that "all personnel actions shall be made free of discrimination." It then empowers the EEOC to enforce that mandate through "necessary and appropriate" "rules, regulations, orders, and instructions." Lastly, it directs that all federal agencies "shall comply" with the EEOC's "rules, regulations, order, and instructions." Judicial review of the EEOC's exercise of its § 717 enforcement authority is not addressed by implication. Since § 717 neither

---

[1] The starting point is the text of § 717. *Chevron, U.S.A., Inc. v Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

expressly provides for, nor expressly precludes, judicial review of the plaintiff's claims, the APA's strong presumption remains intact. Therefore, the defendants' motion should be denied.

**B.      Title VII's legislative history supports judicial review of the challenged agency action.**

As noted, the presumption favoring judicial review "may be overcome only upon a showing of clear and convincing evidence of a contrary legislative intent." *Id.* Congressional intent may be discerned from the legislative history of a statutory scheme. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349, 351 (1984). Review by this Court is appropriate based on the legislative history of Title VII.

## 1964 to 1969

As originally enacted in 1964, Title VII prohibited employment discrimination by private companies, labor unions, and employment agencies, but not federal agencies.[2] Title VII created the EEOC to receive and investigate charges of discrimination and to conciliate resolutions of those charges.

In 1969, by Executive Order 11478, President Nixon declared it the policy of the United States to "prohibit discrimination in employment because of race, color, religion, sex, or national origin."[3] The Executive Order directed the former Civil Service Commission (CSC) to "provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment." The CSC was further directed to issue "necessary and appropriate" "regulations,

---

[2] Civil Rights Act of 1964, Title VII, Pub.L. 88-352, 78 Stat. 241 (1964).

[3] Exec. Order No. 11478; 34 Fed. Reg. 12985 (1969).

orders and instructions" to require each federal agency to (a) provide counseling to employees aggrieved by discrimination; (b) encourage the "resolution of problems on an informal basis"; (c) provide "at least one impartial review" of complaints by the agency; and (d) "provide for appeal to the Civil Service Commission."[4]

During this period, in the private sector, two factors continued to impede progress: (1) The EEOC's serious, long-term, seemingly intractable management problems. (2) The EEOC's enforcement tools and power authorized by Title VII were ineffective.

## 1970 to 1972

In the federal sector, despite Executive Order 11478, employment discrimination remained a serious problem.[5]  Federal employees had little faith in the process provided by their agency employers for counseling, review, and informal resolution of their discrimination complaints.  The process did not effectively protect federal employees from retaliation during and after complaint processing.[6]

In the early 1970s, Congress considered a number of proposals to amend Title VII.  One such proposal was H.R. 1746.  A June 2, 1971 report on H.R. 1746 found "a critical defect of the Federal equal employment program has been the failure of the complaint process."  The report explained that "the defect, which existed under the old complaint procedures, was not corrected by the new complaint process [in Executive Order 11478]."  In fact, the new procedure "for the

---

[4] Id.

[5] Brown v. General Services Admin., 425 U.S. 820, 825-826 (1976).

[6] The Digest of Equal Employment Opportunity Law, Volume XIX, No. 1, p. 3 (Winter 2008), www.eeoc.gov/federal/digest/xix-1.cfm.

informal resolution of complaints" that was created by Executive Order 11478 has "denied employees adequate opportunity for impartial investigation and resolution of complaints," because:

> Under the revised procedures, effective July 1, 1969, the agency is still responsible for investigating and judging itself. Although the procedure provides for the appointment of a hearing examiner from an outside agency, the examiner does not have the authority to conduct an independent investigation. Further, the conclusions and findings of the examiner are in the nature of recommendations to the agency head who makes the final agency determination as to whether discrimination exists. Although the complaint procedure provides for an appeal to the Board of Appeals and Review in the Civil Service Commission, the record shows that the board rarely reverses the agency decision.
>
> The system, which permits the Civil Service Commission to sit in judgment over its own practices and procedures which themselves may raise questions of systemic discrimination, creates a built in conflict-of-interest.[7]

Under H.R. 1746, Title VII would cover federal employees and complaint processing would be handled by the EEOC.[8]  H.R. 1746 failed.  Although, Congress understood that the Civil Service Commission lacked the independence necessary to effectively oversee EEO complaint processing by federal agencies,[9] it also understood that the EEOC was not a viable alternative to the CSC. The EEOC lacked the ability to effectively process private sector employment discrimination complaints;[10] it would be foolish to add federal sector complaint processing.

---

[7] H.R. Rep.No.92-238 (1971); U.S. Code Cong. & Admin. News, 1972, p. 2158-59 (June 2, 1971).

[8] *Id.*

[9] *Id.*
[10] *Id.*

As a result, in the Equal Employment Opportunity Act of 1972, Congress amended Title VII to cover federal employees, by adding a section modeled after Executive Order 11478.[11] The new § 717 did not afford federal employees the protection enjoyed by private sector employees. Instead, individual federal agencies remained responsible for the receipt, investigation and decision of their employees' complaints.  And, appeals from adverse agency decision were still heard by the Civil Service Commission.[12]

In the regulation implementing § 717, the Civil Service Commission did attempt to address conflicts of interest and retaliation.[13]  To "strengthen the system of complaint processing." the revised regulations distinguished between "complaints of discrimination on the grounds of race, color, religion, sex, or national origin,"[14] on the one hand, and charges by a "complainant, his representative, or a witness who alleges restraint, interference, coercion, discrimination, or reprisal in connection with the presentation of a complaint,"[15] on the other. The regulation imposed upon employing agencies the obligation of "timely investigation and resolution of complaints including complaints of coercion and reprisal,"[16] and made clear the procedures for

---

[11] Equal Employment Opportunity Act of 1972, § 11, 86 Stat. 111, (Mandating that "[a]ll personnel actions shall be made free from discrimination based on race, color, religion, sex, or national origin."), 42 U.S.C. §2000e-16.

[12] *Id.*  The 1972 law created the Equal Employment Opportunity Coordinating Counsel on which the Chairs of the EEOC and the CSC served.  The law envisioned discussions between the two regarding efforts to address discrimination in the federal sector.

[13] 37 Fed. Reg. 22717 (1972) (Part 713 Subpart B).

[14] 5 CFR § 713.211 (1973).

[15] 5 CFR § 713.262(a).

[16] 37 Fed.Reg. 22717; 5 CFR § 713.220.

processing retaliation claims.[17] The regulations further mandated that the Civil Service Commission "require the [employing] agency to take whatever action is appropriate" with respect to allegations of retaliation if the agency itself has "not completed an appropriate inquiry."[18] *Gomez-Perez v. Potter, Postmaster General*, 533 U.S. 474, **PAGE** (2008) (in dissent).

Although § 717 does not mention reprisal, its implementing regulation created a claim for agency "restraint, interference, coercion or reprisal" that impedes the processing, investigation, and decision of a discrimination complaint.  If it had been vigorously enforced, this regulation may have significantly improved EEO complaint processing, however, it was not.

### 1973 to 1979

During this period, in the private sector, although the 1972 Act gave the EEOC significant new enforcement power, its success obtaining relief for victims of discrimination was still impaired by management issues.[19]  In the federal sector, the GAO found serious, persistent problems with EEO complaint processing by federal agencies, under the direction of the Civil Service Commission.[20]

---

[17] 5 CFR §§ 713.261, 713.262.

[18] 5 CFR § 713.262(b)(1).

[19] Letter report, dated July 1, 1975, from the Comptroller General of the United States to Senator Edmund S. Muskie, http://gao.gov/assets/120/114425.pdf; Report to the Congress, dated September 28, 1976, by the Comptroller General of the United States, "The Equal Employment Opportunity Commission Has Made Limited Progress In Eliminating Employment Discrimination, No. 093665, http://gao.gov/assets/120/113734.pdf.

[20] Report to Congress, dated April 8, 1977, by the Comptroller General of the United States, "System For Processing Individual Equal Employment Opportunity Discrimination Complaints: Improvements Needed" http://gao.gov/assets/120/117774.pdf.

The Carter administration made reform of the federal government's anti-discrimination programs a major priority.[21]   Like Congress, President Carter knew that the Civil Service Commission could not retain responsibility for implementing and enforcing procedures to investigate and resolve employment discrimination complaints.  He also knew that the EEOC's management problems made it a poor choice to assume responsibility for the task.[22]   The administration considered creating a new federal agency to handle federal employees' discrimination complaints, but the cost was deemed prohibitive.[23]  In the end, the administration transferred responsibility from the former Civil Service Commission to the EEOC.  Apparently, the management problem at the EEOC was less offensive than the conflict problem at the Civil Service Commission.[24]

On February 23, 1978, Congress received the administration's plan for the reorganization of anti-discrimination programs in the federal government. It addressed the Civil Service Commission's "lethargic" enforcement of "fair employment requirements within the Federal government" by the transferring "responsibility for ensuring fair employment for Federal employees" to the EEOC.  President Carter's statement explained:

> Transfer of the Civil Service Commission's equal employment opportunity responsibilities to the EEOC is needed to ensure that: (1) Federal employees have the same rights and remedies as those in the private sector and in State and local government; (2) Federal agencies meet the same standards as are required of other employers; and (3) potential conflicts between an agency's

---

[21] Link to presidential papers of Jimmy Carter.

[22] Link to presidential papers of Jimmy Carter.

[23] *Id.*

[24] Reorganization Plan No. 1 of 1978, 124 CRH 1457 (H.Doc.No. 95-295) (Feb. 23, 1978); http://www.presidency.ucsb.edu/ws/?pid=30404.

equal employment opportunity and personnel management functions are minimized. The Federal government must not fall below the standard of performance it expects of private employers.[25]

The only reason that the EEOC was made responsible for implementation and enforcement of complaint processing was to make the process fair and impartial.[26] The Plan sought to equalize the administrative outcomes in the private and federal sectors. A private sector employee filed a complaint with the EEOC (or an equivalent neutral state or local agency) and that complaint was investigated and decided by a neutral agency official. A federal employee filed a complaint in the EEO Office maintained by her employer, and that complaint was investigated and decided by her employer. Under the Reorganization Plan the EEOC was required to hear every final appeal, from every adverse final agency decision, so that the EEOC could neutralize the effect of every potentially biased investigation and decision that was made by a federal agency.[27] The Carter Administration's Reorganization Plan No. 1[28] became the law by Congressional enactment of the Civil Service Reform Act.[29]

## PURPOSE OF TITLE VII

---

[25] *Id.*

[26] *Id.*

[27] When the EEOC assumed responsibility for oversight of EEO complaint processing, it published the former Civil Service Commission's regulation as an EEOC final rule. 43 Fed.Reg. 60,900 (Dec. 29, 1978).

[28] Reorganization Plan No. 1 of 1978, 43 FR 19807 (May 9, 1978).

[29] Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat 1111 (1978).

In 1978, Congress empowered the EEOC to insure that "[a]ll personnel actions affecting employees or applicants for employment...in executive agencies...shall be made free of discrimination based on race, color, religion, sex, or national origin." To achieve that mandate, Congress recognized the need for a fair, and impartial EEO complaint system. Congress had found the conflicting roles of the former Civil Service Commission (federal personnel administration versus federal anti-employment discrimination administration) compelled the transfer of responsibility for the complaint process to the EEOC. Congress authorized the EEOC to adopt "necessary and appropriate"[30] "rules, regulations, orders, and instructions" to implement a fair and impartial process.

The plaintiff's complaint provides 21 examples of things that HUD did to prevent the prompt, fair, and impartial processing, investigation, and decision of her complaints. Comp. ¶ 56. HUD's actions violated Title VII prohibition on retaliation. Comp. ¶¶ 35-41. The complaint also describes the arbitrary, capricious, bad faith actions taken by the EEOC to protect HUD officials from the consequences of their repeated violations of Title VII's prohibition on retaliation. Comp. ¶¶ 65-107.

Nothing in the legislative history of Title VII suggest a Congressional intent to preclude this Court's review of the EEOC's actions. The EEOC exercised its § 717 enforcement authority in a manner that was clearly inconsistent with the general purpose of Title VII,[31] and the specific

---

[30] On June 29, 2015, in *Michigan v. Environmental Protection Agency*, ___U.S.___, the Court explained that the term "appropriate is the classic broad and all-encompassing term that naturally and traditionally includes consideration of all the relevant factors." And, "an agency may not entirely fail to consider an important aspect of the problem when deciding whether regulation is appropriate" (citations and internal quotations omitted).

[31] On June 25, 2015, in *King v. Burwell*, ___U.S. ___ (2015), the Court explained that the broader purpose of a statute is relevant to determine the meaning of a particular section or term. The

purpose of § 717.  In fact, the EEOC's actions completely flout the Congressional purpose of §

717.  The legislative history of Title VII strongly suggests that Congress would want this Court to

review actions of the actions of the EEOC.

### C.    Title VII's statutory scheme does not provide an alternate remedy to judicial review by this Court.

Judicial review will not be cut off without persuasive reason to believe that was the intent

of Congress.  *Council for Urological Interests v. Sebelius*, 668 F.3d 704, **PAGE**.  Courts have held

that persuasive evidence of a Congressional intent to preclude APA review is suggested by a

statutory scheme that:

1. Provides the party aggrieved by agency action an adequate alternate remedy from a third party; or[32]

2. Provides a "detailed mechanism for judicial consideration of particular issues at the behest of particular persons, but not at the behest" of the aggrieved party seeking APA review.[33]

Application of those doctrines here mean that APA review is precluded if Title VII's statutory

scheme suggest that:

1. the declaratory and injunctive relief the plaintiff seeks is available to her in an action against a third party; or

---

Congressional purpose of a statutory scheme as a whole enlightens the interpretation of a particular statutory provision or term.

[32] *Id.*

[33] *Council for Urological Interests v. Sebelius*, 668 F.3d 704, PAGE, citing *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (DATE).  However, the "Supreme Court has also noted that 'if the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all."  ACLU v. Clapper, ___ F.3d ___ (2015), citing, Sackett v. EPA, ___ U.S. ___ (2012).

     2.      section 717 provides a mechanism for judicial consideration of the plaintiff's claims at the request of a third party, but not at the request of the plaintiff.

The defendants advance both reasons for dismissal. Their motion cites many cases that are inapplicable here. The cases are addressed categorically, rather than individually.

     1.      Title VII provides an employee a cause of action for employment discrimination against her employer. The plaintiff was never employed by the EEOC and, therefore, Title VII's statutory scheme does not provide a remedy for the plaintiff.

     2.      The plaintiff's complaint does not allege claims of employment discrimination against the EEOC and, therefore, the plaintiff is not required to exhaust an administrative or judicial remedy that § 717 provides to a party who alleges employment discrimination.

     3.      Under Title VII's statutory scheme, the EEOC receives and investigates a charge of discrimination filed by an employee in the private sector. If the employee is dissatisfied with the EEOC's investigation, Title VII provides the employee a cause of action against her employer. The plaintiff is not employed in the private sector; she did not ask the EEOC to investigate the claims in her pending compliant against the EEOC. Therefore, the Title VII remedy available to a private sector employee, who is dissatisfied with the EEOC's investigation, does not provide a remedy for the plaintiff's claims in her pending complaint against the EEOC.

Under Title VII, § 717, a federal agency receives and investigates discrimination complaints filed by its employees. If a federal employee is dissatisfied with the agency's investigation, she can try her claims before an administrative judge. The plaintiff is not employed by the EEOC; she did not ask the EEOC to investigate discrimination claims. Therefore, the Title VII remedy available to an employee of the EEOC, who is dissatisfied with the EEOC's investigation, does not provide a remedy for the plaintiff.

4.    The defendants suggests that the plaintiff's remedy for her claims is a cause of action for employment discrimination against HUD.  Since 1976, Courts have held that the federal employees have a right to an impartial administrative adjudication of their employment discrimination complaints.   The judicial remedy in § 717(c) is not a substitute for the administrative remedy. *Brown v. General Services Administration*, 425 U.S. 820 (1976); *Howard v. Pritzker*, 775 F.3d 430 (D.C. Cir. 2015).

The defendants' cite multiple cases in which a court dismissed a complaint, because Title VII's statutory scheme provided an alternate remedy or forum for review.  None of the cases cited preclude review of the plaintiff's claims.  The cases are discussed in section IV.

The statutory scheme in Title VII as a whole, and in § 717 specifically, do not provide any forum for review of the plaintiff's claims.  And, the statutory scheme does not suggest that review of the EEOC's actions are precluded, because the plaintiff can sue someone else instead.  As a result, the APA's strong presumption favoring judicial review applies to provide this Court subject matter jurisdiction over the plaintiff's claims.

### D.    EEOC action was not committed to agency discretion by law.

In *Heckler v. Chaney*, 470 U.S. 821, 832 (1984) the court established a narrow exemption to the APA's broad grant of judicial review.  It held that "[a]n agency's decision not to take enforcement action [is] presumed immune from judicial review under 5 U.S.C. § 701(a)(2)."  *Id.* However, the "decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."  *Id.*

Unlike *Heckler*, the plaintiff does not seek an injunction requiring the EEOC to take discretionary enforcement action.  The complaint's first and third claims challenge action taken by the Agency, not action it failed to take.

The complaint's second claim seeks an injunction requiring the EEOC to follow the non-discretionary procedure, for processing petitions to enforce, in EEOC regulation 29 C.F.R. § 1614.503.  The APA authorizes judicial review when "an agency has refused to enforce a regulation lawfully promulgated and still in effect." *Id.* at 839.  The EEOC lawfully promulgated 29 C.F.R. § 1614.503 using notice and comment rulemaking.  Thus, the EEOC is required to follow the procedure in 29 C.F.R. § 1614.503; and, the *Heckler* presumption does not apply.

Nevertheless, the EEOC stubbornly insists that *Heckler* preclude review of the plaintiff's second claim.  EEOC's Mtn. 13-16.  Citing *Heckler*, the EEOC contends that the text of 29 C.F.R. § 1614.503 "is drawn so that [this Court] would have no meaningful standard against which to judge the [EEOC's] exercise of its discretion.  *Hecker*, 470 U.S. at 830."  The EEOC argues that it was never required to take any action under the broad, discretionary terms of 29 C.F.R. § 1614.503.  But, even if 29 C.F.R. § 1614.503 could be construed to require the EEOC to act, any obligation to act is now moot since "HUD ultimately complied with the November 2012 Order." The Agency's arguments are based on the false statement (that "HUD ultimately complied with the November 2012 Order") and an incorrect interpretation of law.

The EEOC made a similar argument, which was recently summarily and unanimously rejected by the Supreme Court, in Mach Mining LLC v. EEOC, ___ U.S. ___ (2015).  Title VII §2000-e-5(b) (which applies to the private sector) provides that the EEOC "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and

persuasion." *Id.* The EEOC took the position that the text of §2000e-5(b) was so broadly drawn "it provides no standards by which to judge the EEOC's performance of its statutory duty." *Id.* The EEOC also argued that the statutory language demonstrated a Congressional intent to preclude judicial review. *Id.*

The Court dismissed the government's position that the terms of §2000e-5(b) left compliance totally within the discretion of the EEOC. "The language [of §2000e-5(b)] is mandatory, not precatory. (Citations omitted.) [T]he word 'shall' admits of no discretion." The Court further clarified that if the EEOC did nothing to comply at all, then §2000e-5(b) "would offer a perfectly serviceable standard for judicial review." Absent judicial review of the EEOC's compliance with the mandates in the Title VII, "the Commission's compliance with the law would rest in the Commission's hands alone. We need not doubt the EEOC's trustworthiness, or its fidelity to law, to shy away from that result. We need only know-and know that Congress knows-that legal lapses and violations occur, and especially so when they have no consequence. That is why this Court has long applied a strong presumption favoring judicial review of administrative action. Nothing overcomes that presumption with respect to the EEOC's duty" under §2000e-5(b). *Id.*

The EEOC was required by the express terms of 29 C.F.R. § 1614.503 to take specific action. It provides:

> §1614.503  Enforcement of final Commission decisions.
>
> (a) Petition for enforcement. A complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction. The petition shall be submitted to the Office of Federal Operations. The petition shall specifically set forth the reasons that lead the complainant to believe that the agency is not complying with the decision.

(b) Compliance. On behalf of the Commission, the Office of Federal Operations ***shall take all necessary action to ascertain whether the agency is implementing the decision of the Commission***. If the agency is found not to be in compliance with the decision, efforts shall be undertaken to obtain compliance. (Emphasis added.)

...

(d) Referral to the Commission. Where the Director, Office of Federal Operations, is unable to obtain satisfactory compliance with the final decision, ***the Director shall submit appropriate findings and recommendations for enforcement to the Commission, or, as directed by the Commission, refer the matter to another appropriate agency***. (Emphasis added.)

The express text of § 1614.503(b) requires that upon receipt of the plaintiff's petition the EEOC's OFO "***shall*** take all necessary action..."  And the express text of § 1614.503(c) required that "the [OFO] Director ***shall*** submit appropriate findings and recommendations for enforcement..." The regulation uses the word "shall" to command specific agency action. As the Court notes in *Mach Mining*, "the word shall admits of no discretion." The EEOC's compliance with 29 C.F.R. 1614 § 503 was not discretionary; compliance was absolutely required by the text of 29 C.F.R. § 1614.503. The *Heckler* presumption precluding APA review of an agency's exercise of discretionary enforcement authority simply does not apply here.  Instead, the APA's strong presumption favoring judicial review of agency action and inaction applies to provide this Court subject matter jurisdiction over the second claim in the plaintiff's complaint.

The Agency's statement that "HUD ultimately complied with the November 2012 Order" is false and, therefore, the EEOC was never relieved of its obligation to act under 29 C.F.R. § 1614.503.  A brief statement of the facts is provided to refute the Agency's statement.[34]

---

[34] The plaintiff is preparing a supplemental record of her interactions with the EEOC and supporting documentation that will be filed in the near future.

1.      In April 2007, the plaintiff filed an informal complaint of discrimination with the HUD EEO Office.  In August 2007, the plaintiff filed a formal administrative complaint and, in October 2007, she filed an amendment with the HUD EEO Office.

2.      On November 2, 2010, (three and a half years after it received the informal complaint), HUD issued its Final Agency Decision.  HUD found that the plaintiff was not subject to unlawful employment discrimination.

3.      The plaintiff appealed HUD's decision to the EEOC's Office of Federal Operations.

4.      On November 21, 2012, (22 months after it received the appeal) the Commission issued a Decision and Order on the appeal.  The Commission vacated HUD's finding of no discrimination and it remanded the 2007 Complaint to the HUD EEO Office.

The Commission's Remand Order required HUD to do the following:

> (a) arrange for an EEO Counselor to meet with the plaintiff and allow her to clarify the claims to be investigate;
>
> (b) engage an investigator to obtain affidavit testimony and all records that may be relevant to the clarified claims;
>
> (c) allow the plaintiff to submit new evidence into the investigative record;
>
> (d) complete a supplemental investigation within 120 days [or by March 21, 2013]; and,
>
> (e) upon completion of the supplemental investigation, provide a copy to the plaintiff and to the Compliance Division of the OFO.

5.      The Remand Order also explained the remedies available to the plaintiff if HUD failed to comply with all of its requirements.  One of the suggested remedies was to file a petition to enforce pursuant to 29 C.F.R. § 1614.503.

6.      Pursuant to the EEOC's regulation, on February 14, 2013, the plaintiff notified HUD that she was amending her 2007 Complaint to include the claims in her then-pending 2011 Complaint.[35] The plaintiff also notified HUD that its investigation must cover both her 2007 and 2011 Complaints.

7.      After the plaintiff made several unsuccessful attempts to persuade HUD to comply with the Remand Order,[36] she began drafting a petition to enforce the order. In drafting her petition, the plaintiff relied on EEOC training materials on appropriate sanctions for agency noncompliance with a Commission order.[37] The training materials cover the legal standard applied by the EEOC to determine an appropriate sanction when an agency fails to comply with one of its orders. The training materials also discuss several EEOC appellate decisions that impose sanctions, including default judgments.

8.      On June 21, 2013, pursuant to 29 C.F.R. § 1614.503(a), the plaintiff filed a petition for enforcement of the Commission's Remand Order. The petition requested a default judgment on the claims in her 2007, 2010, and 2011 Complaints because:

- HUD openly and defiantly failed to comply with any of the requirements of the Remand Order;

- HUD failed to offer any justification for its noncompliance;

[35] Email dated February 14, 2013, from Clare Harrigan, to HUD Team Leader Theresa Marshall, HUD EEO Office Director John McLemore, Investigator Dave Hunter, General Counsel Helen R. Kanovsky, and Deputy General Counsel Kevin Simpson.

[36] Correspondence dated February 10, 2013; emails dated May 4, 11, 22, 24, 29, 30, and 31, June 3, 4, 5, 6, and 12, August 6, 14, 15, and 22, 2013; notes from in person meetings with the HUD EEO Office on August 19 and 22, 2013.)

[37] Sanctions in the Administrative Process, Eve G. Friedli, Administrative Judge, July 12, 2011.

- HUD's noncompliance with the remand order had, and continues to have, a serious prejudicial effect on the plaintiff's ability to prove her claims;

- failing to sanction HUD for its noncompliance with the Commission's order, rewards and encourages future HUD EEO Office noncompliance with Commission orders.

9.      From June to August 2013, the EEOC failed to even acknowledge its receipt of the Petition for Enforcement. The EEOC would not respond to written requests for information about the petition or answer its phone.

10.      Between August 2013 and December 2014, the plaintiff tried unsuccessfully to persuade the EEOC's OFO to process her petition in accordance with the procedures in 29 C.F.R. § 1614.503.[38] The plaintiff also tried to persuade the Commissioners to intervene and direct the OFO to follow its procedures in 29 C.F.R. § 1614.503.[39]

11.      On October 26, 2013, the plaintiff received a binder from HUD, titled "Report of Investigation CLARE HARRIGAN CASE # HUD-00090-2007." It contained three unsigned affidavits (which under the EEOC's regulations are worthless) and an incomplete, deceptive, self-serving record of the plaintiff's efforts to secure HUD compliance with the Remand Order.

12.      HUD never complied with any of the five requirements of the Commission's November 2012 Remand Order.

## E.      EEOC action that exceeds its § 717 authority is categorically subject to judicial review.

---

[38] Correspondence to EEOC's OFO Compliance Attorney Navarro Pulley, OFO Compliance Division Director Marjorie Borders, OFO Compliance and Control Division Chief Robert J. Barnhart, and OFO Director Carlton Hadden.

[39] Correspondence to each of the then-serving EEOC Commissioners, the EEOC's Office of Communications and Legislative Affairs Director Todd A. Cox, EEOC's Inspector General, and EEOC's General Counsel.

Administrative agencies may act only pursuant to authority delegated to them by Congress. *American Library Ass'n v. FCC*, 406 F.3d 689, (D.C. Cir. 2005). The APA provides judicial review where an agency acts outside the scope of its authority. 5 U.S.C. § 706(2)(C).

Congress intentionally withheld rulemaking authority from the EEOC when it enacted Title VII of the Civil Rights Act of 1964. The EEOC is authorized to adopt only "suitable procedural regulations." 42 U.S.C. § 200e-12(a). Substantive interpretation of Title VII were left to the courts. The EEOC adopted a rule and guidance which authorized the dismissal of the complaints against HUD. The EEOC's rule and guidance are not procedural; they are incorrect substantive interpretations of Title VII.

Although § 717 appears to grant somewhat broader authority ("necessary and appropriate" "regulations, orders and instructions"), the EEOC is still constrained to act only in a manner consistent with its authority. The EEOC issued orders that are inconsistent with the purpose § 717 and contrary to the role assigned to the EEOC by Congress. The APA's broad grant of authority applies to provide this Court subject matter jurisdiction to review the plaintiff's claims.

## II.   THIS COURT MAY COMPEL THE EEOC TO COMPLY WITH ITS OWN REGULATION

For decades courts have held that a valid regulation promulgated by a federal agency is binding on the agency and its officials. *Service v. Dulles*, 354 U.S. § 1614.503. The procedure in 29 C.F.R. § 1614.503 is a valid regulation that was promulgated by the EEOC. Therefore, the procedure in 29 C.F.R. § 1614.503 is binding on the Commissioners, EEOC officials, and EEOC employees. The procedure in 29 C.F.R. § 1614.503 includes step-by-step instructions that "shall"

be followed when the EEOC receives a petition to enforce.  The text of the regulation provides no discretion to ignore its requirements or to make substitutions for its requirements.

The defendants' motion argues that plaintiff's second claim for an injunction directing the defendant to comply with 29 C.F.R. § 1614.503 must be dismissed.  EEOC's Mtn 13-16.  The defendants' contend that 29 C.F.R. § 1614.503 is not "the sort of mandatory regulation that would give rise to jurisdiction under the Mandamus Act."  EEOC's Mtn. 13.

As discussed in section II D above, 29 C.F.R. § 1614.503 is stated in mandatory terms that do not allow for any discretions.  The defendant' motion to dismiss the plaintiff's second claim should be denied.

## III.    INJURY

The party invoking federal jurisdiction bears the burden of establishing standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)  At the pleading stage of the litigation the court "must accept as true all material allegations of the complaint, drawing all reasonable inferences from those allegations in [the] plaintiff[s] favor, and presuming that general allegations embrace those specific facts that are necessary to support the claim."  *LaRogue v. Holder*, 650 F.3d 777, 785 (internal quotation marks, citations, and brackets omitted).

The allegations in the plaintiff's complaint are sufficient to establish her standing.  Each of the plaintiff's three claims state the injury she incurred; the causal connection between her injury and the actions of the EEOC; and the way in which the injury will be redressed by a favorable ruling.  *See Lujan*, 504 U.S. at 560-61.

The defendants' motion argues that the plaintiff failed to establish Article III standing for the third claim in her complaint.  The defendants' contend that the plaintiff "is speculating that

HUD will dispose of her 2011 Complaint, and then the EEOC will affirm for the same reason."
EEOC's Mtn. 17-18.

1.      The plaintiff's knowledge that HUD will "dispose of her 2011 Complaint" is not speculative. The plaintiff now has eight years of experience with the HUD EEO Office. She is very familiar with the way in which the office processes, investigates, and decides her complaints. HUD will "dispose of her 2011 Complaint." At this point, the HUD EEO Office is strategically delaying action on the 2011 Complaint.

2.      Records the HUD EEO Office is required to publish show that it has received, investigated, and decided thousands of complaints; and, that it has never found that a HUD employee was the victim of discrimination or retaliation. It certainly is not speculative for the plaintiff to believe that she will not be the first among thousands to receive a HUD EEO Office, Final Agency Decision, with a finding of discrimination, retaliation, and reprisal.

3.      A ruling on the plaintiff's July 2013 Petition for Enforcement would resolve the plaintiff's 2011 Complaint. The EEOC has consistently refused to comply with its own regulation on the processing of the plaintiff's petition. The plaintiff is injured and continues to be injured by the EEOC's failure to rule on her petition.

4.      The Director of the EEOC's Office of Federal Operations has issued each of the rulings on the plaintiff's appeals. The Director is responsible for the office that has consistently refused to process the plaintiff's Petition for Enforcement. In 2013, the Director denied the plaintiff's request to stay the appeal of the 2011 Complaint to allow the Director time to comply. The reasoning in Director's ruling on the appeal of the plaintiff's 2011 Complaint is completely at odds with his recent public statements regarding federal agency EEO Office chopping up the

24

claims in EEO complaints and dismissing the pieces. The Director's decision on the appeal of the 2011 Complaint allows the HUD EEO Office to find no retaliation occured and it allows the Director to uphold that decision on appeal. The Director has a serious conflict of interest, based on his relationship with at least one of the Responsible Management Officials named in the 2011 Complaint.

The EEOC's action and inaction on the plaintiff's 2011 Complaint caused a concrete injury, there is a causal connection between injury and the actions of the EEOC; and, the injury will be redressed by a favorable ruling.

## IV.    THE COMPLAINT STATES A CAUSE OF ACTION FOR RELIEF

The APA creates a cause of action to challenge agency action for which there is no other adequate remedy. 5 U.S.C. §§ 702, 704. The defendants contend that the APA does not mean what it says. They argue that since Title VII does not provide a remedy, the plaintiff has no cause of action. EEOC's Mtn. 19-21. The opposite is true. Because the plaintiff has no remedy under Title VII or any other statute, she has a cause of action under the APA.

The defendants' cite cases which hold that "employees' may not sue the EEOC for the administrative processing of their complaints." EEOC Mtn. 19-21. The cases cited hold that an employee in the private sector may not sue the EEOC for "alleged negligence or other malfeasance in the processing of an employment discrimination complaint." The courts have so held because "the legislative history of the 1972 amendments to Title VII reveal that Congress intended the private right of action provided in section 706(f)(1) of the Act (42 U.S.C. § 2000e-5(f)(1))-under which an aggrieved employee may bring a Title VII action directly against his or her employer-to serve as the remedy for any improper handling of a discrimination charge by the

EEOC." *Smith v. Casellas*, 119 F.3d 33 (D.C. Cir. 1997) (Citing cases in the 2d, 10th, 7th, 9th, and 5th Circuits.).

As discussed in section II C above, the plaintiff does not work in the private sector and, therefore, the Title VII remedy for private sector employees is not available to the plaintiff.  In addition, as discussed in section II C above, the plaintiff is not an employee of the EEOC, and, therefore, the Title VII remedy available to federal employees (who are unhappy about the investigation of their complaint by their agency's EEO Office) is not available to the plaintiff. *Jordan v. Summers*, 205 F 2d 337, 342-342 (7th Cir. 2000).[40]   The cases cited by the defendant are distinguishable.  The plaintiff's complaint states a cause of action under the APA.

---

[40] ("Neither party points to a case that either directly supports or undermines Jordan's failure-to-process cause of action against the [agency's EEO Office], but an analogy to the EEOC practice is instructive here.  Just as the EEOC processes complaints of discrimination from employees in the private sector, each federal agency must have an EEO Division to process complaints from agency employees.  See 29 C.F.R. § 1614.  It is well established that a private-sector employee has no cause of action against the EEOC for its failure to process a charge of discrimination. (Citations omitted.)  A similar rule is warranted here.  Jordan presents no persuasive reason why she, as a federal employee should be given an implied failure-to-process cause of action.")

## V.     CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss should be denied.


Respectfully submitted,


Clare Harrigan
*Pro Se* Plaintiff
2100 Westview Terrace
Silver Spring, Maryland  20910
(240) 643-9277
harriganveeoc@gmail.com

July 6, 2015


## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2015 a copy of the foregoing motion and was sent by first-class mail to counsel for the defendants at the following address:

Gregory Dworkowitz, Esq.
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7107
Washington, D.C.  20530.


Clare Harrigan