# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CLARE HARRIGAN                        )
                                      )
            *Pro Se* Plaintiff        )
                                      )
            v.                        )   Civil Action No. 1:15-cv-00511 (APM)
                                      )
JENNY R. YANG, Chair of the          )
United States Equal Employment       )
Opportunity Commission, *et al*.     )
                                      )
            Defendants                )

# PLAINTIFF'S REVISED MEMORANDUM OF LAW IN
# OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I.      THE APA AUTHORIZES JUDICIAL REVIEW OF THE PLAINTIFF'S CLAIMS............................5

        A.      Title VII's text does not preclude judicial review.......................................5

        B.      Title VII's legislative history supports judicial review of the challenged
                agency action...................................................................................7

        C.      Title VII's statutory scheme does not provide an alternate remedy
                to judicial review by this Court.............................................................16

        D.      The actions taken by the EEOC were not committed to its discretion
                by law.............................................................................................18

        E.      EEOC action that exceeds its Title VII authority is subject to judicial
                review. ...........................................................................................25

II.     THIS COURT MAY COMPEL THE EEOC TO COMPLY WITH ITS OWN REGULATION.......27

III.    INJURY..........................................................................................................27

IV.     THE COMPLAINT STATES A CAUSE OF ACTION FOR RELIEF....................................30

V.      CONCLUSION..................................................................................................31

## TABLE OF AUTHORITIES

<u>CASES</u>

*Aid Ass's for Lutherans v. U.S. Postal Servs.*, 321 F.3d 1166 (D.C. Cir. 1999)............25

*American Library Ass'n v. FCC,* 406 F.3d 689 (D.C. Cir. 2005)......................................25

*\*Block v. Community Nutrition Institute*, 467 U.S. 340 (1984).               5, 7, 30

*\*Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986) .........................5, 7.

*Brown v. General Services Admin.*, 425 U.S. 820 (1976)...........................................8, 18.

*Council for Urological Interests v. Sebelius*, 668 F.3d 704 (D.C. Cir. 2011)..................16

*Gomez-Perez v. Potter,* 533 U.S. 474 (2008)..............................................................11

*Heckler v. Chaney*, 470 U.S. 821 (1984)...............................................................18, 19, 22

*Howard v. Pritzker*, 775 F.3d 430 (D.C. Cir. 2015)....................................................18

*Jordan v. Summers*, 205 F.3d 337 (7th Cir. 2000)....................................................31

*\*King v. Burwell*, ___U.S. ___ (2015).......................................................................16

LaRogue v. Holder, 650 F.3d 777 (2011).................................................................28

*Lujan v. Defenders of Wildlife*, 504 U.s. 555 (1992)................................................27, 28

*\*Mach Mining v. EEOC*, ___ U.S. ___ (2015).........................................................20, 21

*\*Michigan v. EPA*, ___U.S.___ (2015)....................................................................15, 26

*Service v. Dulles*, 354 U.S. 636 (1957).....................................................................27

*Sky Television v. FCC*, 589 Fed.Appx 541 (D.C. Cir. 2014)....................................25

*Smith v. Casellas*, 119 F.3d 33 (D.C. Cir. 1997).....................................................30

*\*Traynor v. Turnage*, 485 U.S. 535 (1988)..............................................................5

## STATUTES

Administrative Procedure Act, 5 U.S.C. §§ 701-706.

Civil Rights Act of 1964 § 7, Pub.L. 88-352, 78 Stat. 241 (1964),
     42 U.S.C. § 2000e et seq.

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat 1111 (1978)................................14

Equal Employment Opportunity Act of 1972, §11, 86 Stat. 111 (1972),
     42 U.S.C. §2000e-16...................................................................................................10, 11

## EXECUTIVE ORDERS

Exec. Order No. 11478; 34 Fed. Reg. 12985 (1969).........................................................8, 9, 10, 11

## REGULATIONS

5 C.F.R. PART 713, Subpart B, 37 Fed. Reg. 22 (1972).........................................................10, 11, 15

29 C.F.R. PART 1614

## FEDERAL REPORTS

H.R. Rep. No. 92-238 (1971); U.S. Code Cong. & Admin. News (June 2, 1971).......................9, 10

Jimmy Carter Library; Collection: Office of Staff Secretary; Series: Presidential Files; Folder: 2/14/78 [1]; Container 63; Report titled: Reorganization of Equal Employment Opportunity Programs...........................................................................................................................8, 11, 12, 13

Letter Report, Comptroller General of the United States, Response to Senator Edmund S. Muskie (July 1, 1975) http://gao.gov/assets/120/114425.pdf....................................................11

Report to the Congress, Comptroller General of the United States, The Equal Employment Opportunity Commission Has Made Limited Progress In Eliminating Employment Discrimination, No. 093665 (Sept. 28, 1976) http://gao.gov/assets/120/113734.pdf................................11, 12

Report to Congress, Comptroller General of the United States, System For Processing Individual Equal Employment Opportunity Discrimination Complaints: Improvements Needed (April 8, 1977) http://gao.gov/assets/120/117774.pdf....................................................................12

## MISCELLANEOUS

CQ Almanac, Carter Reorganization Plan, http://library.cqpress.com/cqalmanac/cqal78-1237303.............................................................................................................14

Digest of Equal Employment Opportunity Law, EEOC, Volume XIX, No. 1, p. 3 (Winter 2008) www.eeoc.gov/federal/digest/xix-1.cfm..............................................................................8

Reorganization Plan No. 1 of 1978, 124 CRH 1457 (H.Doc.No. 95-295) (Feb. 23, 1978); http://www.presidency.ucsb.edu/ws/?pid=30404................................................12, 13, 14

## ARGUMENT

## I.   THE APA AUTHORIZES JUDICIAL REVIEW OF THE PLAINTIFF'S CLAIMS

The Administrative Procedure Act codifies a "strong presumption" that administrative action is subject to judicial review.[1]  It waives the sovereign immunity of the United States to allow any person "adversely affected or aggrieved" by agency action to seek injunctive relief in a court.  (5 U.S.C. §702.)  The reviewing court can "compel agency action unlawfully withheld" and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary and capricious," "in excess of statutory authority," or "without observance of procedure required by law."  (5 U.S.C. §706.)

"The presumption in favor of judicial review may be overcome only upon a showing of clear and convincing evidence of a contrary legislative intent."[2]  Courts have found sufficient evidence to overcome the presumption where: (a) the text of a statute expressly precludes judicial review; (b) "specific legislative history" provides a "reliable indicator of a congressional intent" to preclude review; or (c) the detail of a statutory scheme provides a "fairly discernible" congressional intent to preclude judicial review.[3]  The defendants' argue that Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e) bars judicial review of the plaintiff's claims. (EEOC's Mtn. 9-11, 19-21.)  The defendants are wrong.  Nothing in Title VII's text, legislative

---

[1] *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670-671 (1986).

[2] *Traynor v. Turnage*, 485 U.S. 535, 542 (1988) (citation and internal quotation marks omitted).

[3] *Bowen v. Mich. Acad.of Family Physicians, supra.* at 673.; *Block v. Community Nutrition Institute*, 467 U.S. 340, 345 (1984) ("Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.")

history, or statutory scheme suggests Congressional intent to prevent review of the challenged

acts.

## A.    Title VII's text does not preclude judicial review.

The APA's presumption in favor of judicial review may be withdrawn by the express or

implied terms of a statute.  (5 U.S.C. §701(a)(1).)  In addition, the APA applies only to "final

agency action for which there is no other adequate remedy in a court."  (5 U.S.C. §704.)

Section 717 of Title VII covers federal sector employment discrimination.  The relevant

text provides:

> (a)…All personnel actions affecting employees or applicants for
> employment…in executive agencies…shall be made free of discrimination
> based on race, color, religion, sex, or national origin.
> …
> (b)…Except as otherwise provided…the Equal Employment Opportunity
> Commission shall have authority to enforce the provisions of subsection
> (a)…and shall issue such rules, regulations, orders and instructions as it
> deems necessary and appropriate to carry out its responsibilities under this
> section.
> …
> The head of each…agency…shall comply with such rules, regulations,
> orders, and instructions [of the EEOC]…

42 U.S.C. § 2000e-16.

The APA's §701(a)(1) and §704 limitations on judicial review do not apply.  The language

of §717 does not express or imply a bar on review by this court and it does not provide an

"adequate [alternate] remedy" to review by this Court.  The text simply does not address

judicial review of, or a judicial remedy for, the plaintiff's claims.  Therefore, the APA's strong

presumption remains intact and the defendants' motion should be denied.

**B.**   **Title VII's legislative history supports judicial review of the challenged agency action.**

Congressional intent regarding judicial review may be discerned from the legislative history of a statutory scheme.[4]   The legislative history of Title VII strongly suggests intent to permit APA review of the complaint.

### 1964 to 1969

As originally enacted in 1964, Title VII prohibited employment discrimination by private companies, labor unions, and employment agencies, but not federal agencies.[5]   Title VII created the EEOC to receive and investigate charges of discrimination and to conciliate resolutions of those charges.[6]

Since federal employees were not covered by Title VII, in 1969, by Executive Order 11478, President Nixon declared it the policy of the United States to "prohibit discrimination in employment because of race, color, religion, sex, or national origin." [7]   The E.O. directed the former Civil Service Commission (CSC) to "provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment."[8]   The CSC was further directed to issue "necessary and appropriate" "regulations, orders and instructions" to require each federal agency to (a) provide counseling to employees aggrieved by discrimination; (b)

---

[4] *Id.*

[5] Civil Rights Act of 1964, Title VII, Pub.L. 88-352, 78 Stat. 241 (1964).

[6] *Id.*

[7] Exec. Order No. 11478; 34 Fed. Reg. 12985 (1969).

[8] *Id.*

encourage the "resolution of problems on an informal basis;" (c) provide "at least one impartial review" of complaints by the agency; and (d) "provide for appeal to the CSC."[9]

During this period, in the private sector, two factors continued to impede progress:  (1) The EEOC's serious, long-term, seemingly intractable management problems.[10]  (2) The EEOC's Title VII enforcement authority was ineffective.

## 1970 to 1972

In the federal sector, despite Executive Order 11478, employment discrimination remained a serious problem.[11]  Federal employees had little faith in the process provided by their agency employers for counseling, review, and informal resolution of their discrimination complaints.  And, the process did not effectively protect federal employees from retaliation during and after complaint processing.[12]

In the early 1970s, Congress considered a number of proposals to amend Title VII.  One such proposal was H.R. 1746.  A June 2, 1971 report on H.R. 1746 found "a critical defect of the

---

[9] *Id.*

[10] Jimmy Carter Library; Collection: Office of Staff Secretary; Series: Presidential Files; Folder: 2/14/78 [1]; Container 63; Report titled: Reorganization of Equal Employment Opportunity Programs; Appendix B - Status Report on the Equal Employment Opportunity Commission, p. B-1: "The Equal Employment Opportunity Commission has encountered serious problems in the execution of its responsibilities.  These problems have been enumerated by the Government Accounting Office, the United States Commission on Civil Rights, and the House Subcommittee on Equal Opportunities.  They include poor management, lack of adequate staff training, an ineffective charge intake system, excessive delays in the processing of charges, and failure to address effectively systemic discrimination."

[11] *Brown v. General Services Admin.*, 425 U.S. 820, 825-826 (1976).

[12] The Digest of Equal Employment Opportunity Law, EEOC, Volume XIX, No. 1, p. 3 (Winter 2008), www.eeoc.gov/federal/digest/xix-1.cfm.

Federal equal employment program has been the failure of the complaint process."[13]   The

report explained that "the defect, which existed under the old complaint procedures, was not

corrected by the new complaint process [in Executive Order 11478]."[14]   In fact, the new

procedure "for the informal resolution of complaints" that was created by Executive Order

11478 has "denied employees adequate opportunity for impartial investigation and resolution

of complaints,"[15] because:

> Under the revised procedures, effective July 1, 1969, the agency is still
> responsible for investigating and judging itself.  Although the procedure
> provides for the appointment of a hearing examiner from an outside
> agency, the examiner does not have the authority to conduct an
> independent investigation.  Further, the conclusions and findings of the
> examiner are in the nature of recommendations to the agency head who
> makes the final agency determination as to whether discrimination exists.
> Although the complaint procedure provides for an appeal to the Board of
> Appeals and Review in the Civil Service Commission, the record shows that
> the board rarely reverses the agency decision.
>
> The system, which permits the Civil Service Commission to sit in judgment
> over its own practices and procedures which themselves may raise
> questions of systemic discrimination, creates a built in conflict-of-
> interest.[16]

Under H.R. 1746, Title VII would have covered federal employees and complaint processing

would have been handled by the EEOC.[17]  H.R. 1746 failed.  Although, Congress understood that

the Civil Service Commission lacked the independence necessary to effectively oversee EEO

---

[13] H.R. Rep.No.92-238 (1971); U.S. Code Cong. & Admin. News, 1972, p. 2158-59 (June 2, 1971).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Id.

complaint processing by federal agencies,[18] it also understood that the EEOC was not a viable alternative to the CSC.  The EEOC lacked the ability to effectively process private sector employment discrimination complaints;[19] it would have been foolish to add federal sector complaint processing.

As a result, in the Equal Employment Opportunity Act of 1972 ("the 1972 Act"), Congress amended Title VII to cover federal employees, by adding a section modeled after Executive Order 11478.[20]  The new §717 did not afford federal employees the protection enjoyed by private sector employees.  Instead, individual federal agencies remained responsible for the receipt, investigation and decision of their employees' complaints.  And, appeals from adverse agency decision were still heard by the Civil Service Commission.[21]

In its regulation implementing §717, the Civil Service Commission did attempt to address conflicts of interest at the agencies and retaliation by the agencies.[22]  Although §717 does not mention reprisal, its implementing regulation created a claim for agency "restraint, interference, coercion or reprisal" that impedes the processing, investigation, and decision of a

---

[18] *Id.*

[19] *Id.*

[20] Equal Employment Opportunity Act of 1972, 86 Stat. 111, §11 (Mandating that "[a]ll personnel actions shall be made free from discrimination based on race, color, religion, sex, or national origin."); 42 U.S.C. §2000e-16 (2004) (as amended).

[21] *Id.*

[22] 5 C.F.R. PART 713, Subpart B, 37 Fed. Reg. 22 (1972).

discrimination complaint.[23]   If it had been vigorously enforced, this regulation may have significantly improved EEO complaint processing, however, it was not.

The 1972 law created the Equal Employment Opportunity Coordinating Counsel on which both the Chair of the EEOC and of the CSC served.  Among other things, the Counsel was expected to discuss and develop plans to effectively enforce Title VII in the federal sector.[24]

## 1973 to 1979

During this period, in the private sector, although the 1972 Act gave the EEOC significant new enforcement power, its success obtaining relief for victims of discrimination was still impaired by management issues.[25]   In the federal sector, the U.S. Government Accounting

---

[23] *Gomez-Perez v. Potter,* 533 U.S. 474 (2008) The Civil Service Commission's regulation implementing §717 did the following:  To strengthen the system of complaint processing. the revised regulations distinguished between "complaints of discrimination on the grounds of race, color, religion, sex, or national origin," (5 CFR § 713.211) on the one hand, and charges by a "complainant, his representative, or a witness who alleges restraint, interference, coercion, discrimination, or reprisal in connection with the presentation of a complaint," (5 CFR § 713.262(a)) on the other. The regulation imposed upon employing agencies the obligation of "timely investigation and resolution of complaints including complaints of coercion and reprisal," (5 CFR § 713.220) and made clear the procedures for processing retaliation claims (5 CFR §§ 713.261, 713.262).  The regulations further mandated that the Civil Service Commission "require the [employing] agency to take whatever action is appropriate" with respect to allegations of retaliation if the agency itself has "not completed an appropriate inquiry" (5 CFR § 713.262(b)(1)).

[24] Jimmy Carter Library; Collection: Office of Staff Secretary; Series: Presidential Files; Folder: 2/14/78 [1]; Container 63; Report titled: Reorganization of Equal Employment Opportunity Programs, page 18:  "The Equal Employment Opportunity Coordinating Council was created in 1972 to coordinate the Federal equal employment opportunity enforcement effort.  For the most part, the Council has been a failure.  The problems in equal employment enforcement coordination which prompted Congress to establish the Council have grown worse in the last five years."

[25] Letter Report, Comptroller General of the United States, Response to Senator Edmund S. Muskie (July 1, 1975) http://gao.gov/assets/120/114425.pdf;  Report to the Congress,

Office found serious, persistent problems with EEO complaint processing by federal agencies, under the direction of the Civil Service Commission.[26]  The members of the Equal Employment Opportunity Coordinating Counsel were unable to work together to coordinate federal anti-discrimination programs.[27]

The Carter administration made reform of the federal government's anti-discrimination programs a major priority.[28]  Like Congress, President Carter knew that the Civil Service Commission should not retain responsibility for implementing and enforcing procedures to investigate and resolve employment discrimination complaints.  He also knew that the EEOC's management problems made it a poor choice to assume responsibility for the task.[29]  The

---

Comptroller General of the United States, The Equal Employment Opportunity Commission Has Made Limited Progress In Eliminating Employment Discrimination, No. 093665 (Sept. 28, 1976) http://gao.gov/assets/120/113734.pdf.

[26] Report to Congress, dated April 8, 1977, by the Comptroller General of the United States, System For Processing Individual Equal Employment Opportunity Discrimination Complaints: Improvements Needed http://gao.gov/assets/120/117774.pdf.

[27] Jimmy Carter Library; Collection: Office of Staff Secretary; Series: Presidential Files; Folder: 2/14/78 [1]; Container 63; Report titled: Reorganization of Equal Employment Opportunity Programs, page 4, ("While several attempts to coordinate Federal equal employment programs have been made, they have had limited success.  An Equal Employment Opportunity Coordinating Council, consisting of the Secretary of Labor, the Attorney General, the Chairpersons of the EEOC, the Civil Service Commission and the Commission on Civil Rights was established to eliminate 'conflict, competition, duplication and inconsistency,' but this has had little effect."); page 18 ("Historically the EEOC and the CSC have not been able to agree on a large number of civil rights issues and the Equal Employment Opportunity Coordinating Council, which we recommend be abolished, has been almost totally ineffective in the area of disputes between the agencies.").

[28] *Id.* at Report titled: Reorganization of Equal Employment Opportunity Programs.

[29] *Id.* at Report titled: Reorganization of Equal Employment Opportunity Programs. An attachment to the Report is a White House Memorandum on the reorganization plan, dated February 1, 1978, for Rick Hutchinson, from Bunny Mitchell.  The Memorandum states: "The

administration considered creating a new federal agency to handle federal employees' discrimination complaints, but that option was found unworkable.[30]   In the end, the administration transferred responsibility from the former Civil Service Commission to the EEOC. The management problem at the EEOC was less offensive than the conflict problem at the Civil Service Commission.[31]

On February 23, 1978, Congress received the administration's plan for the reorganization of anti-discrimination programs in the federal government. It addressed the Civil Service Commission's "lethargic" enforcement of "fair employment requirements within the Federal government" by the transferring "responsibility for ensuring fair employment for Federal employees" to the EEOC.  President Carter's statement explained:

> Transfer of the Civil Service Commission's equal employment opportunity responsibilities to the EEOC is needed to ensure that: (1) Federal

---

Hill has traditionally not had confidence in the EEOC to perform its present functions.  Our biggest task will be to show that the EEOC is capable of taking on additional responsibility by our reorganization plan."

[30] *Id.* at Report titled: Reorganization of Equal Employment Opportunity Programs, page 9:
> Consolidation into a New Agency.   A new agency would symbolize a renewed Federal commitment to equal employment opportunity.  It would start with a fresh reputation, enabling it to attract well-qualified talent, and would have all the advantages of a single mission equal employment enforcement agency.
> This approach, however, would incur the opposition of civil rights groups committed to preserving the EEOC.  The magnitude of start-up problems for a new agency would have a prolonged and disruptive effect on enforcement operations.  Finally, the new agency probably would inherit much of the staff of the existing agencies and many of their problems, including complaint backlogs.  The likely result would be the EEOC with a new name and a start-up period of diminished effectiveness.

[31] Reorganization Plan No. 1 of 1978, 124 CRH 1457 (H.Doc.No. 95-295) (Feb. 23, 1978); http://www.presidency.ucsb.edu/ws/?pid=30404.

employees have the same rights and remedies as those in the private sector and in State and local government; (2) Federal agencies meet the same standards as are required of other employers; and (3) potential conflicts between an agency's equal employment opportunity and personnel management functions are minimized.  The Federal government must not fall below the standard of performance it expects of private employers.[32]

The legislative history of Title VII §717 demonstrates that the only reason that the EEOC was made responsible for implementation and enforcement of complaint processing was to make the process prompt, fair, and impartial.[33]  The Reorganization Plan sought to equalize the administrative outcomes in the private and federal sectors.  A private sector employee filed a complaint with the EEOC (or an equivalent neutral state or local agency) and that complaint was investigated and decided by a neutral agency official.  A federal employee filed a complaint in the EEO Office maintained by her employer, and that complaint was investigated and decided by her employer.  Under the Reorganization Plan, the EEOC would hear appeals from adverse final agency decisions, so that it could neutralize the effect of the biased investigations and decisions made by federal agencies.[34]  The Carter Administration's Reorganization Plan[35] became the law by Congressional enactment of the Civil Service Reform Act.[36]

---

[32] *Id.*

[33] *Id.*

[34] When the EEOC assumed responsibility for oversight of EEO complaint processing, it published the former Civil Service Commission's regulation as an EEOC final rule.  43 Fed.Reg. 60,900 (Dec. 29, 1978).

[35] Reorganization Plan No. 1 of 1978, 43 FR 19807 (May 9, 1978).

[36] Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat 1111 (1978); See also, CQ Almanac, Carter Reorganization Plan, http://library.cqpress.com/cqalmanac/cqal78-1237303.

## PURPOSE OF TITLE VII §717

In 1978, Congress made the EEOC responsible for achieving the Title VII §717 mandate that "[a]ll personnel actions affecting employees or applicants for employment...in executive agencies...shall be made free of discrimination based on race, color, religion, sex, or national origin." To achieve that mandate, Congress recognized the need for prompt, fair, and impartial discrimination complaint procedures. Section 717 empowered the EEOC to adopt "necessary and appropriate" "rules, regulations, orders, and instructions" to implement appropriate procedures.[37] And, §717 required the head of each federal agency to comply the EEOC's "rules, regulations, orders, and instructions."

The plaintiff's complaint provides 21 examples of things that HUD did to prevent the prompt, fair, and impartial processing, investigation, and decision of her complaints. (Comp. ¶ 56.) HUD's actions violated §717's implementing regulations and Title VII's prohibition on retaliation. (Comp. ¶¶ 35-41.) The plaintiff's complaint also describes the arbitrary, capricious, bad faith action taken by the EEOC to protect HUD officials from the consequences of their repeated violations of §717's implementing regulations and the Title VII prohibition on retaliation. (Comp. ¶¶ 65-107.)

Nothing in the legislative history of §717 suggests intent to bar judicial review of the plaintiff's claims. The EEOC exercised its §717 enforcement authority in a manner that was

---

[37] On June 29, 2015, in *Michigan v. EPA*, ___U.S.___, the Court explained that the term "appropriate is the classic broad and all-encompassing term that naturally and traditionally includes consideration of all the relevant factors." And, "an agency may not entirely fail to consider an important aspect of the problem when deciding whether regulation is appropriate" (citations and internal quotations omitted).

15

clearly inconsistent with the specific purpose of §717 and the general purpose of Title VII.[38]   In

fact, the actions of the EEOC flout the purpose of §717.   The legislative history of Title VII

strongly suggests that Congress would want this Court to review the actions of the EEOC.

> **C.   Title VII's statutory scheme does not preclude judicial review or provide an alternate remedy to judicial review by this Court.**

Judicial review "will not be cut off" without "persuasive reason to believe that such was

the purpose of Congress."[39]   Courts have held that a persuasive reason is suggested by a

statutory scheme that provides a "fairly discernable" Congressional intent to preclude review.[40]

The defendants advance this theory for dismissal.   (EEOC's Mtn. 11-13, 19-21.)   Their

motion cites many cases in which a court found that Title VII's statutory scheme suggested a

congressional intent to preclude judicial review of the complaint.   However, in the cited cases

the claims for relief were factually distinct from the claims here.   As a result, the precedent in

the cited cases is not relevant to a determination of the plaintiff's right to APA review of the

challenged agency action.   The cases are addressed by category rather than individually.

---

[38] On June 25, 2015, in *King v. Burwell*, ___U.S. ___, the Court explained that the broader purpose of a statute is relevant to determine the meaning of a particular section or term.   The Congressional purpose of a statutory scheme as a whole enlightens the interpretation of a particular statutory provision or term.

[39] *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 709 (D.C. Cir. 2011) (citation omitted).

[40] *Id.* (To overcome the APA's strong presumption favoring judicial review, the government may draw "inferences of intent from the statutory scheme as a whole, such as when the statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, but not at the behest of others (internal citation and quotations omitted)."

1.      Under Title VII's statutory scheme, after exhausting administrative remedies, a federal employee has a cause of action for employment discrimination against his/her federal agency employer.   The defendants' motion cites examples of employment discrimination actions brought by federal employees against their federal employers that were dismissed by a court.  (EEOC's Mtn. 9-11.)  The precedent in those cases is not relevant, because the plaintiff has not brought an employment discrimination action against her federal agency employer.  For example, the plaintiff in *Brown* is a federal employee whose employment discrimination case was dismissed for failing to bring it under Title VII and for failing to exhaust §717's administrative remedies.   The plaintiff in *Aviles-Wynkoop* is a federal employee, whose employment discrimination claims were dismissed for several reasons, including that she brought them under the APA rather than Title VII.   Like *Brown* and *Aviles-Wynkoop*, the precedent in the *Davis*, *Glapion*, and *McKenna* cases does not apply here.

2.      Under Title VII's statutory scheme, the EEOC receives and investigates charges of discrimination filed by employees in the private sector.  If an employee is dissatisfied with the EEOC's investigation, Title VII provides the employee a cause of action against her employer. The defendants' motion cites cases, brought by private sector employees against the EEOC for its faulty investigation, which were dismissed by a court.  Examples include the *Smith* and *Jordan* cases.  (EEOC's Mtn. 11, 19-21.)  The precedent in those cases is not relevant, because the plaintiff is not employed in the private sector and she does not allege a faulty investigation by the EEOC.

3.      Under §717, a federal agency receives, investigates, and decides discrimination complaints filed by its employees.  The defendants' cites cases, brought by federal employees

against their federal agency employers for faulty processing and investigation, which were dismissed by a court.  Examples include the *Daniels* and *Koch* cases.  (EEOC's Mtn. 21.)  The precedent in those cases is not relevant, because the plaintiff's action is not brought against her federal agency employer for faulty processing and investigation.

4.      The defendants suggest that the plaintiff's remedy for her claims is a cause of action for employment discrimination against HUD.  (EEOC's Mtn. 11, footnote 4.)  Since 1976 Courts have held that federal employees have a right to the prompt, fair, and impartial administrative adjudication of their employment discrimination complaints.  The judicial remedy in §717(c) is not a substitute for the administrative remedy in §717.[41]

The statutory scheme in Title VII as a whole (and in §717 specifically) does not provide a forum for review of the plaintiff's claims.  And, the statutory scheme does not suggest a bar on judicial review of the EEOC's actions.  As a result, the APA's strong presumption favoring judicial review applies to provide this Court subject matter jurisdiction over the plaintiff's claims.

## D.      The actions taken by the EEOC were not committed to its discretion by law.

In *Heckler v. Chaney*,[42] the court established a narrow exception to the APA's broad grant of judicial review.  It held that "[a]n agency's decision not to take enforcement action [is] presumed immune from judicial review under APA §701(a)(2)."[43]  However, the "decision is only presumptively unreviewable; the presumption may be rebutted where the substantive

---

[41] *Brown v. General Services Administration*, 425 U.S. 820 (1976); *Howard v. Pritzker*, 775 F.3d 430 (D.C. Cir. 2015).

[42] *Heckler v. Chaney*, 470 U.S. 821 (1984).

[43] *Id.*

statute has provided guidelines for the agency to follow in exercising its enforcement powers."[44]

Unlike the plaintiffs in *Heckler*, here the plaintiff does not seek to enjoin the Agency to take discretionary enforcement action.  The complaint's first and third claims challenge action that the Agency took, not action that it failed to take.  Thus, the *Heckler* exemption to review does not apply.

The complaint's second claim seeks an injunction requiring the EEOC to follow the non-discretionary procedure for processing petitions to enforce in EEOC regulation 29 C.F.R. §1614.503.  The *Heckler* decision recognized that the exception to review did not apply when "an agency has refused to enforce a regulation lawfully promulgated and still in effect."[45]  The EEOC lawfully promulgated 29 C.F.R. §1614.503 using notice and comment rulemaking.[46]  Thus, the *Heckler* presumption does not apply to bar review.

Nevertheless, the EEOC stubbornly insists that *Heckler* preclude review of the plaintiff's second claim.  (EEOC's Mtn. 13-16.)  Citing *Heckler*, the EEOC contends that the text of 29 C.F.R. §1614.503 "is drawn so that [this Court] would have no meaningful standard against which to judge the [EEOC's] exercise of its discretion.  *Hecker*, 470 U.S. at 830."  As a result, the EEOC maintains it was never required to take any action under the broad, discretionary terms of 29 C.F.R. §1614.503.  But, according to the EEOC, even if 29 C.F.R. §1614.503 could be construed to require the EEOC to act, any obligation is now moot since "HUD ultimately complied with the

---

[44] *Id.*

[45] *Id.* at 839.

[46]

November 2012 Order." (EEOC's Mtn. 16.) The Agency's position is based on an incorrect interpretation of *Heckler* and the false statement that "HUD ultimately complied with the November 2012 Order."

The EEOC made a similar argument, which the Supreme Court recently unanimously rejected, in Mach Mining v. EEOC.[47] Title VII §2000-e-5(b) (which applies to the private sector) provides that the EEOC "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." The EEOC took the position that the text of §2000e-5(b) was so broadly drawn "it provides no standards by which to judge the EEOC's performance of its statutory duty."[48] The EEOC also argued that the statutory text demonstrated a Congressional intent to preclude judicial review.[49]

The Court dismissed the government's position that the terms of §2000e-5(b) left compliance totally within the discretion of the EEOC. "The language [of §2000e-5(b)] is mandatory, not precatory (citations omitted.) [T]he word 'shall' admits of no discretion."[50] The Court further clarified that, if the EEOC did nothing at all to comply, then §2000e-5(b) "would offer a perfectly serviceable standard for judicial review."

The Court expressed concern that absent judicial review of the EEOC's compliance with the mandates in Title VII:

---

[47] Mach Mining v. EEOC, ___ U.S. ___ (2015).

[48] *Id.*

[49] *Id.*

[50] *Id.*

The Commission's compliance with the law would rest in the Commission's hands alone.  We need not doubt the EEOC's trustworthiness, or its fidelity to law, to shy away from that result.  We need only know-and know that Congress knows-that legal lapses and violations occur, and especially so when they have no consequence.  That is why this Court has long applied a strong presumption favoring judicial review of administrative action.  Nothing overcomes that presumption with respect to the EEOC's duty [under §2000e-5(b)].[51]

Here, the EEOC was required by the express terms of 29 C.F.R. §1614.503 to take specific action.  **The regulation states:**

§1614.503  Enforcement of final Commission decisions.

(a) Petition for enforcement. A complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction. The petition shall be submitted to the Office of Federal Operations. The petition shall specifically set forth the reasons that lead the complainant to believe that the agency is not complying with the decision.

(b) Compliance. On behalf of the Commission, the Office of Federal Operations ***shall take all necessary action to ascertain whether the agency is implementing the decision of the Commission***. If the agency is found not to be in compliance with the decision, efforts shall be undertaken to obtain compliance.  (Emphasis added.)

...

(d) Referral to the Commission. Where the Director, Office of Federal Operations, is unable to obtain satisfactory compliance with the final decision,  ***the Director shall submit appropriate findings and recommendations for enforcement to the Commission, or, as directed by the Commission, refer the matter to another appropriate agency***. (Emphasis added.)

The express text of § 1614.503(b) required that upon receipt of the plaintiff's petition the EEOC's OFO "***shall*** take all necessary action...(emphasis added)."  And, the express text of §1614.503(c) required that "the [OFO] Director ***shall*** submit appropriate findings and recommendations for enforcement...(emphasis added)."  The regulation uses the word "shall"

---

[51] *Id.*

to command specific agency action.  As the Court noted in *Mach Mining*, "the word shall admits of no discretion."

Compliance with 29 C.F.R. §1614.503 was not discretionary; it was absolutely required. The *Heckler* presumption precluding APA review of an agency's exercise of discretionary enforcement authority simply does not apply here.  Instead, the APA's strong presumption favoring judicial review of agency action and inaction applies to provide this Court subject matter jurisdiction over the second claim in the plaintiff's complaint.

In addition, the Agency's statement that "HUD ultimately complied with the November 2012 Order" is false and, therefore, the EEOC has never been relieved of its obligation to act under 29 C.F.R. § 1614.503.  A brief statement of the facts is provided to refute the Agency's statement.

1.      In April 2007, the plaintiff filed an informal complaint of discrimination with the HUD EEO Office.  In August 2007, the plaintiff filed a formal administrative complaint and, in October 2007, she filed an amendment with the HUD EEO Office.

2.      On November 2, 2010, (three and a half years after it received the informal complaint), HUD issued its Final Agency Decision.  HUD found that the plaintiff was not subject to unlawful employment discrimination.

3.      The plaintiff appealed HUD's decision to the EEOC's Office of Federal Operations.

4.      On November 21, 2012, (22 months after it received the appeal) the Commission issued a Decision and Order on the appeal.  The Commission vacated HUD's finding of no discrimination and it remanded the 2007 Complaint to the HUD EEO Office.

The Commission's Remand Order required HUD to do the following:

22

(a) arrange for an EEO Counselor to meet with the plaintiff and allow her to clarify the claims to be investigate;

(b) engage an investigator to obtain affidavit testimony and all records that may be relevant to the clarified claims;

(c) allow the plaintiff to submit new evidence into the investigative record;

(d) complete a supplemental investigation within 120 days [or by March 21, 2013]; and,

(e) upon completion of the supplemental investigation, provide a copy to the plaintiff and to the Compliance Division of the OFO.

5.     The Remand Order also explained the remedies available to the plaintiff if HUD failed to comply with all of its requirements.  One of the suggested remedies was to file a petition to enforce pursuant to 29 C.F.R. §1614.503.

6.     Pursuant to the EEOC's regulation, on February 14, 2013, the plaintiff notified HUD that she was amending her 2007 Complaint to include the claims in her then-pending 2011 Complaint.  (Comp. ¶ 76-77.)  The plaintiff also notified HUD that its investigation must cover both her 2007 and 2011 Complaints.  (Comp. ¶ 79.)

7.     After the plaintiff made several unsuccessful attempts to persuade HUD to comply with the Remand Order (Comp. ¶ 80), she began drafting a petition to enforce the order.  (Comp. ¶ 82.)  In drafting her petition, the plaintiff relied on EEOC training materials on appropriate sanctions for agency noncompliance with a Commission order.  The training materials cover the legal standard applied by the EEOC to determine an appropriate sanction when an agency fails to comply with one of its orders.  The training materials also discuss several EEOC appellate decisions that impose sanctions, including default judgments.  (Comp. ¶ 83.)

8.      On June 21, 2013, pursuant to 29 C.F.R. § 1614.503(a), the plaintiff filed a

petition for enforcement of the Commission's Remand Order.  The petition requested a default

judgment on the claims in her 2007, 2010, and 2011 Complaints because:

- HUD openly and defiantly failed to comply with any of the requirements of the Remand Order;

- HUD failed to offer any justification for its noncompliance;

- HUD's noncompliance with the remand order had, and continues to have, a serious prejudicial effect on the plaintiff's ability to prove her claims;

- Failing to sanction HUD for its noncompliance with the Commission's order, rewards and encourages future HUD EEO Office noncompliance with Commission orders.  (Comp. ¶ 85-86.)

9.      From June to August 2013, the EEOC failed to even acknowledge its receipt of

the Petition for Enforcement.  The EEOC would not respond to written requests for information

about the petition or answer its phone.

10.     Between August 2013 and December 2014, the plaintiff tried unsuccessfully to

persuade the EEOC's OFO to process her petition in accordance with the procedures in 29 C.F.R.

§ 1614.503.  The plaintiff also tried to persuade the Commissioners to intervene and direct the

OFO to follow its procedures in 29 C.F.R. § 1614.503.  (Comp. ¶ 93-99.)

11.     On October 26, 2013, in the mail, the plaintiff received a binder from HUD titled

"Report of Investigation CLARE HARRIGAN CASE # HUD-00090-2007."   It contained three

unsigned affidavits (which under the EEOC's regulations are worthless) and an incomplete,

deceptive, self-serving record of the plaintiff's efforts to secure HUD compliance with the

Remand Order.

12.    HUD never complied with any of the five requirements of the Commission's November 2012 Remand Order.

### E.    EEOC action that exceeds its Title VII authority is subject to judicial review.

Administrative agencies may act only pursuant to authority delegated to them by Congress.[52]  The APA's broad presumption favoring judicial review applies when an agency acts outside the scope of its authority.  "[E]ven where a statute precludes judicial review, 'judicial review is available when an agency acts *ultra vires*.'"[53]

Congress withheld rulemaking authority from the EEOC when it enacted Title VII of the Civil Rights Act of 1964.  The EEOC is authorized to adopt only "suitable procedural regulations." (42 U.S.C. §2000e-12(a).)  Substantive interpretation of Title VII is left to the courts.  The EEOC adopted a rule and issued guidance that require the dismissal of claims against agencies for violations of §717's implementing regulations.   The EEOC adopted this rule despite §717's mandate that all agencies ***shall*** comply with §717's implementing regulations.  (Comp. ¶ 108-114, 126-132.)

In addition, the violations that are dismissed under the EEOC's rule are violations of Title VII's prohibition on retaliation.  (Comp. ¶ 36-39.)  A rule that requires the dismissal of viable claims for violations of Title VII is not "a suitable procedural regulation."  It is an incorrect substantive interpretation of Title VII.

---

[52] See *American Library Ass'n v. FCC*, 406 F.3d 689 (D.C. Cir. 2005).

[53] Sky Television v. FCC, 589 Fed.Appx 541 (D.C. Cir. 2014), citing Aid Ass's for Lutherans v. U.S. Postal Servs., 321 f3d 1166, 1173 (D.C. Cir. 1999).

The EEOC's §717 authority is limited to the adoption of "necessary and appropriate" "rules, regulations, orders, and instructions" to accomplish the purpose of §717.  On June 29, 2015, in *Michigan v. EPA*, the Supreme Court explained that "appropriate" is a term "that naturally and traditionally includes consideration of all relevant factors."  And, "[a]lthough this term leaves agencies with flexibility, an agency may not entirely fail to consider important aspects of the problem when deciding whether a regulation is appropriate."[54]  Here, the EEOC's rule inappropriately allows federal agencies to ignore the regulations governing the processing, investigation, and decision of federal employees' discrimination complaints.  The rule absolves federal agencies of any responsibility for their violations of Title VII's prohibition on retaliation.  Clearly the EEOC failed to consider, or callously ignored, the foreseeable consequences of its rule that requires the dismissal of viable claims for violations of §717's implementing regulations and Title VII's prohibition on retaliation.

In addition, the EEOC issued appellate decisions that were inconsistent with the purpose of §717 and contrary to the role the EEOC was assigned by Congress.  The EEOC acted outside the scope of its §717 authority when it issued the appellate orders on the plaintiff's complaints.  Clearly, the APA's strong presumption favoring judicial review applies to provide this Court subject matter jurisdiction over the actions of the EEOC.

---

[54] Michigan v. EPA, ____ U.S. ____ (2015) (internal citations and quotation marks omitted).

26

## II.   THIS COURT MAY COMPEL THE EEOC TO COMPLY WITH ITS OWN REGULATION

For decades courts have held that a valid regulation promulgated by a federal agency is binding on the agency and its officials.[55]   The procedure in 29 C.F.R. §1614.503 is a valid regulation that was promulgated by the EEOC.  Therefore, the procedure in 29 C.F.R. §1614.503 is binding on the Commissioners, EEOC officials, and EEOC employees.  The procedure in 29 C.F.R. § 1614.503 includes step-by-step instructions that "shall" be followed when the EEOC receives a petition to enforce.  The text of the regulation provides no discretion to ignore its requirements or to make substitutions for its requirements.

The defendants' motion argues that the plaintiff's second claim for an injunction directing the defendant to comply with 29 C.F.R. §1614.503 must be dismissed.  (EEOC's Mtn 13-16.)   The defendants' contend that 29 C.F.R. §1614.503 is not "the sort of mandatory regulation that would give rise to jurisdiction under the Mandamus Act."  (EEOC's Mtn. 13.)

As discussed in section II D above, 29 C.F.R. §1614.503 is stated in mandatory terms that do not allow for any discretion.  The defendant' motion to dismiss the plaintiff's second claim should be denied.

## III.   INJURY

The party invoking federal jurisdiction bears the burden of establishing standing.[56]   At the pleading stage of the litigation the court "must accept as true all material allegations of the complaint, drawing all reasonable inferences from those allegations in [the] plaintiff[s] favor,

---

[55] See *Service v. Dulles*, 354 U.S. 636 (1957).

[56] See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

and presuming that general allegations embrace those specific facts that are necessary to support the claim."[57]

The allegations in the plaintiff's complaint are sufficient to establish her standing. Each of the plaintiff's three claims state the injury she incurred; the causal connection between her injury and the actions of the EEOC; and the way in which the injury will be redressed by a favorable ruling.[58] The defendants' motion argues that the plaintiff failed to establish Article III standing for the third claim in her complaint. The defendants' contend that the plaintiff "is speculating that HUD will dispose of her 2011 Complaint, and then the EEOC will affirm for the same reason." (EEOC's Mtn. 17-18.) The defendants are wrong for the following reasons:

1.      The plaintiff's knowledge that HUD will "dispose of her 2011 Complaint" is not speculative. The plaintiff now has eight years of experience with the HUD EEO Office. She is very familiar with the way in which the office processes, investigates, and decides her complaints. HUD will "dispose of her 2011 Complaint."

2.      Records the HUD EEO Office is required to publish show that it has received, investigated, and decided hundreds of complaints and that it has never found that a HUD employee was the victim of discrimination or retaliation. (Comp. ¶ 41.) Plaintiff's belief that she will not be the first among hundreds to receive a HUD Final Agency Decision that finds discrimination, retaliation, or reprisal is not speculative.

3.      A ruling on the plaintiff's July 2013 Petition for Enforcement would resolve the plaintiff's 2011 Complaint. The EEOC has consistently refused to comply with its own regulation

---

[57] See *LaRogue v. Holder*, 650 F.3d 777, 785 (internal quotation marks, citations, and brackets omitted).

[58] S*ee Lujan v. Defenders of Wildlife, supra.* at 560-61.

28

on the processing of the plaintiff's petition.  The plaintiff is injured and continues to be injured by the EEOC's failure to rule on her petition.

4.     The Director of the EEOC's Office of Federal Operations has issued each of the rulings on the plaintiff's appeals.  The Director is responsible for the office that has consistently refused to process the plaintiff's Petition for Enforcement.  In 2013, the Director denied the plaintiff's request to stay the appeal of the 2011 Complaint to allow the Director time to process the petition to enforce.  The reasoning in the Director's appellate decision on the 2011 Complaint is completely at odds with his recent public statements that federal agency EEO Offices should not chop up claims in EEO complaints and dismiss the pieces.  The Director's appellate decision on the 2011 Complaint allows the HUD EEO Office to find that no retaliation occurred and it allows the Director to uphold that decision on appeal.  The Director has a serious conflict of interest, based on his relationship with at least one of the Responsible Management Officials named in the 2011 Complaint.

The EEOC's action and inaction on the plaintiff's 2011 Complaint caused a concrete injury, there is a causal connection between that injury and the EEOC's actions, and the injury will be redressed by a favorable ruling.

## IV.    THE COMPLAINT STATES A CAUSE OF ACTION FOR RELIEF

"The APA confers a general cause of action upon persons adversely affected or aggrieved by agency action within the meaning of a relevant statute."[59]  The APA creates a cause of action to challenge agency action for which there is no other adequate remedy.  (5 U.S.C. §§ 702, 704.)  The defendants contend that the APA does not mean what it says.  They argue that since Title VII does not provide a remedy, the plaintiff has no cause of action.  (EEOC's Mtn. 19-21.)  The opposite is true.  Because the plaintiff has no remedy under Title VII, or any other statute, she has a cause of action under the APA.

The defendants' cite cases which hold that private sector employees may not sue the EEOC for its faulty administrative processing of their complaints.  (EEOC Mtn. 19-21.)  The courts have so held because:

> the legislative history of the 1972 amendments to Title VII reveal that Congress intended the private right of action provided in section 706(f)(1) of the Act (42 U.S.C. § 2000e-5(f)(1))-under which an aggrieved employee may bring a Title VII action directly against his or her employer-to serve as the remedy for any improper handling of a discrimination charge by the EEOC."[60]

As discussed in section II C above, the plaintiff does not work in the private sector and, therefore, the Title VII remedy for private sector employees is not available to the plaintiff.  In addition, as discussed in section II C above, the plaintiff is not an employee of the EEOC and, therefore, the Title VII remedy available to federal employees (who are unhappy about the

---

[59] *Block v. Community Nutrition Institute*, 467 U.S. 340, 346 (1984).

[60] *Smith v. Casellas*, 119 F.3d 33 (D.C. Cir. 1997) (Citing cases in the 2d, 10th, 7th, 9th, and 5th Circuits.).

investigation of their complaint by their agency's EEO Office) is not available to the plaintiff.[61]

The cases cited by the defendant are distinguishable.  The plaintiff's complaint states a cause of

action under the APA.


## V.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss should be denied.


Respectfully submitted,


Clare Harrigan
*Pro Se* Plaintiff
2100 Westview Terrace
Silver Spring, Maryland  20910
(240) 643-9277
harriganveeoc@gmail.com

July 15, 2015

---

[61] *Jordan v. Summers*, 205 F 2d 337, 342-342 (7th Cir. 2000) ("Neither party points to a case that either directly supports or undermines Jordan's failure-to-process cause of action against the [agency's EEO Office], but an analogy to the EEOC practice is instructive here.  Just as the EEOC processes complaints of discrimination from employees in the private sector, each federal agency must have an EEO Division to process complaints from agency employees.  See 29 C.F.R. § 1614.  It is well established that a private-sector employee has no cause of action against the EEOC for its failure to process a charge of discrimination. (Citations omitted.)  A similar rule is warranted here.  Jordan presents no persuasive reason why she, as a federal employee should be given an implied failure-to-process cause of action.")

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2015 a copy of the foregoing was sent by first-class mail to counsel for the defendants at the following address:

Gregory Dworkowitz, Esq.
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7107
Washington, D.C.  20530.


Clare Harrigan
_____
Clare Harrigan